## Standard Oil Company of Kentucky v. Watson.

(Decided June 20, 1913).

### Appeal from Bourbon Circuit Court.

1. Master and Servant—Injury to Servant While Engaged in Tearing Down Old Building—Duty of Inspection.—The law does not impose upon the master engaged in the hazardous work of tearing down an old building the duty of inspecting it so that his workmen may have a safe place to work, and in an action by a servant who was injured from the breaking of a beam upon which he was standing while engaged in tearing down an old building, it would be requiring too high a degree of care to say that it was the duty of the master to have known that there was a knot in the particular piece of timber, or that the knot ran through the timber at such an angle as to make it dangerous to his workmen.

2. Master and Servant—Injury to Servant Caused from Defective Beam in Building.—While, if the master knew the piece of timber was defective it was his duty to warn him of the defect, but there is no evidence of such knowledge, and it would be unreasonable to require a master to examine every timber in an old house that was being torn down.

3. Master and Servant—Action by Servant for Personal Injury—Evidence—Peremptory Instruction.—In order to hold appellant liable for damages, it would be necessary to show that the foreman knew of the knot in the plank, and that it ran through at such an angle as to make it dangerous, and that he had not warned appellee of these facts. There being no evidence of such knowledge on the part of the master, the peremptory instruction asked should have been given.

EMMETT M. DICKSON and HUMPHREY, MIDDLETON & HUMPHREY for appellant.

DENIS DUNDON for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

In October, 1911, appellee with other workmen was engaged under the foreman of appellant in tearing down an old building owned by it in the City of Paris, and while so engaged was injured, and instituted this action against appellant, alleging that his injury was caused by its negligence. He recovered a verdict for $4,175 from which this appeal is prosecuted.

The allegation of the petition is in substance, that the plaintiff while acting under the instructions of defendant's foreman, went upon a cross beam of the building which they were tearing down, and which was several feet above the ground, for the purpose of knocking off the sheeting from the roof of said building, and while so engaged one of the beams or cross pieces broke and the plaintiff fell to the ground, and broke his leg and sprained his ankle.

The negligence relied upon is that the place at which he was so directed by the foreman to work was unsafe at the time and known to the foreman to be unsafe, or could have been known to him by the exercise of reasonable care, and that such danger was not known to the plaintiff, and could not have been known to him by the exercise of reasonable care.

The answer denied the material allegations of the petition, and in a separate paragraph pleaded contributory negligence.

At the conclusion of the plaintiff's evidence, and again at the conclusion of all the evidence the defendant asked for a peremptory instruction, which motions were overruled, and an investigation of the correctness of these rulings involves a statement of the evidence.

The plaintiff stated that he was up on top of the roof, and had been prizing off the sheeting which was under the metal roof that had already been removed, when he was directed by the foreman to go down through the roof and work from the inside in knocking off the sheeting; that is, instead of prizing it up from the outside, to knock it loose from the underside; he states that on one side of the building there was a plank across these beams or joist, and that when he first went down in there from the top, he and the man, Campbell, who was working there with him stood on that plank, and knocked loose the sheeting on that side of the house; but that when he had occasion to go to the other side, there was no plank across the joist on that side, and he

walked across on the joist; that he stepped onto one beam and was in the act of striking up at the sheeting with a short iron piece which he had in his hand for that purpose, when the beam upon which he was resting his weight, broke, and he fell to the floor, some seven or eight feet and was injured.

He says that the reason the beam broke was that there was a knot in it, and that the knot was on the side of the beam opposite from the way he approached it, and that the knot run "bias" and went through or about through it; that he could not see the knot from the side he was on, but that the foreman who was right under him on the other side of the beam could have seen it if he had looked, and that the beam seemed upon the side from which he approached it to be sound. That most of the sheeting had all been knocked loose from the underside, and in so doing, he and Campbell had walked on these beams backward and forward, and that when the beam broke, and he fell, the foreman had only been in the house about two or three minutes.

William White stated that he was working there at the time, and that Watson was engaged in knocking off the sheeting from the underside, and that it was easier to get it off that way than it was to prize it off from the upperside; that the beams upon which Watson and Campbell were standing were put there to hold the building together, and were what is known as "collar beams," and their dimensions were "2x6;" that he afterwards examined the knot that was in the beam, and that it ran from the bottom to the top "catercornered" across the 6 inch way, and that it showed through a little on the other side, and that the knot, the way it ran through the beam destroyed about 95 per cent of the strength of the beam; that the foreman directed them to knock off the sheeting from the inside, and at the time of the accident was standing almost under Watson, and only a few feet from him, and was in position to have seen the knot which was only about 22 inches or 23 inches from his eyes at the time, and that the knot was about the size of his arm and went all the way through the plank "catercornered" and showed a little on the other side.

These are the only two witnesses introduced by the plaintiff showing how the accident happened. The foreman testified that he did not know of the defective condition of the beam and did not see the knot in it, and

had been there where appellant was at work only about two minutes and a half. It will be observed that there was no evidence that the foreman knew of the knot in the plank, or of the weakness of the beam, and the question to be determined is, was the foreman engaged in such work required to exercise ordinary care to discover the unsafe condition of the beam?

The chief danger of the defect seems to have grown out of the angle at which the knot went through the beam, and it may be fairly inferred from the evidence that if it had gone straight through instead of having gone through at an angle or "catercornered," that it would not have destroyed the strength of the beam to such an extent as to have given way under the weight of a man. The law does not impose upon a master engaged in the hazardous work of tearing down an old building, the duty of inspecting it so that his workmen may have a safe place to work; and certainly in this case, it would be requiring too high a degree of care to say that it was his duty to have known that there was a knot in any particular timber in the old house that was being town down, or that the knot ran through the timber at such an angle as to make it dangerous to his workmen. If the master may be mulcted in damages for his failure to discover such defects, or if he must before undertaking such work or during its progress go to the expense and trouble of having a minute examination made of all such timbers, it would make the expense of tearing down an old house almost as great as building a new one.

The cause of this injury was the knot in the beam, and the manner in which it ran through it, and we are unable to see from this evidence how the master could with any ordinary degree of care, have known of the knot, to say nothing of the manner in which it ran through the beam. To require a master to examine every timber in an old house that was being torn down, would be most unreasonable, and we do not see how the foreman in this case could have been expected to know that the particular beam in question was defective. Of course, if he knew that it was defective, it was his duty to warn the workmen of the defect.

The case of Ballard and Ballard Co. v. Lee's Admr., 131 Ky., 412 was in its essential features something like this. In that case Lee was directed to move certain roofing on top of a building, and while so engaged fell

from the roof and was killed. They were in that case also demolishing an old building, and the court said:

"But the master is not, in cases like this, charged with the duty of exercising ordinary care to discover the dangerous or unsafe places and is not liable to respond in damages for an injury to the servant because of the defective or dangerous condition that he did not know of, but which might have been discovered by the exercise of ordinary care. In Thompson on Negligence, section 3979, we find the following: 'The work of tearing down an old building is necessarily attended with dangers, which arise in the progress of the work, and which the master cannot always anticipate and provide against. Therefore, it has been held that the rule which makes it encumbent upon the master to provide his servant with a safe place within which to work does not apply in such situation, though it is conceded to be the duty of the master not to send his servants into a place which he knows to be dangerous without apprising them of the danger. * * * In the destruction of a building there is no attempt or obligation on the part of the master to make it secure; but on the contrary, the work of removal is one in which, in turn, each part of the structure becomes insecure. This every workman understands, and he must be governed accordingly. But, while a person engaged in the demolition of a building is not bound to furnish a workman engaged therein with a safe place to work, he is under an obligation not to send him into a place known to the master to be dangerous, and which the workman cannot perceive to be so by the use of ordinary care."

And again in this same case the court said:

"It seems to us that if the owner of a house employs a competent and experienced laborer to take off an old roof and put on a new one, or to repair the roof, or to tear down a building, it is fair to assume that the employe will take the necessary precautions to protect himself from injury on account of the dangerous or defective condition of the premises about which he is engaged to work, and that it would be imposing upon the employer an unreasonable duty to require him to have a careful examination of the premises made for the purpose of discovering defects or dangers in order that he might inform the employe concerning them."

So that it seems under the authority of that case it is not required of a master engaged in the hazardous

business of tearing down an old building, that he should exercise even ordinary care to discover dangerous defects.

The case of Dyer v. Pauley Jail Building Co., 144 Ky., 592, was one where they were tearing down an old jail preparatory to erecting a new one. Dyer was employed on the work and was injured by being struck on the leg by a piece of iron. In response to the argument that it was the duty of the master to furnish him with a safe place to work, the court said:

"For the appellee it is insisted that, even if the injury occurred in this way, it is not liable, for in accepting employment of this character, appellant assumed the risk incident thereto. It was impossible for the appellee to furnish him a safe place to work, for the very work that was being undertaken rendered the place unsafe. Appellant must have known, and did know, that when the bolts were cut and the rivets driven from their places the pieces of sheet iron were liable to and naturally would fall."

In order to hold appellant liable for damages in this case, it would be necessary to show that the foreman knew of the knot in the plank, and that it ran through the beam at such an angle as to make it dangerous, and had not warned appellee of these facts.

We are of the opinion that the peremptory instruction should have been given.

The judgment is reversed for a new trial consistent herewith.