## Lawrence County, on Relation, Etc. v. Lawrence Fiscal Court, et al.

(Decided March 18, 1921.)

### From Lawrence County.

1. Counties—Fiscal Court—Quorum—Records.—Although a proposition or matter pending before a fiscal court is not affirmatively shown by the record to have received the votes of a majority of the

members of the court present, yet, if enough members to constitute a quorum. or more are shown to have been given an opportunity to vote and did not vote upon the proposition, the silence of those not voting, in the absence of anything appearing to the contrary, will be deemed as an act of acquiescence and consent to the votes of the majority, and such silent members will be considered as voting with the majority.

2. Counties—Fiscal Courts—Adoption of Resolution.—Where the re- cords of a fiscal court affirmatively show that the court was com- posed of seven justices and the county judge, all of whom were present, and a resolution received the vote of four of the justices, and three of them voted against it, and it appeared that the county judge did not vote, and nothing appearing to show that he was in any manner deprived of voting, he will be deemed to have voted with the four votes cast in favor of the resolution and it will be considered as adopted.

3. Counties—Power of Fiscal Court in Aid of Road Construction.— In the absence of some inhibition the legislature has authority to confer the power upon the fiscal court of a county to donate the funds of the county to another agency of the government to aid in the construction by the latter of the public roads of the county, or in aid of any other public enterprise in which the people of the county are interested, provided the proposed conferred power does not violate any of the fundamental maxims of right and justice un- derlying local self government and upon which counties are sup- posed to be organized.

4. Counties—Roads—Construction of.—In this state the legislature is expressly given the right to confer power on the counties of the state in aid of the construction of roads and other similar internal improvements therein by section 179 of the Constitution.

5. Counties—Fiscal Courts—Delegation of Powers.—While fiscal courts of counties may not delegate their discretionary powers without positive authority to do so; yet if the language of the statute which it is claimed confers such authority, by reasonable and fair intent, can be given no other meaning than the one claimed, it will be so construed; and where the statute provides. that donation of funds by the county may be accepted and pre- scribes the agency to whom such donations may be made, and the use for which they shall be expended, it will be deemed as confer- ring upon the county the authority to donate the funds for that purpose.

6. Counties—Fiscal Courts—Delegation of Powers.—It is not a dele- gation of the authority of a fiscal court for it to select an agency authorized to perform some of the imposed duties upon the county with the authority in such agency to perform those duties inde- pendently of the supervision of the county, since the power which the court may not delegate is the discretionary one determining whether the proposed act should be performed at all, either by the county, or through some designated agency.

7. Counties—Road and Bridge Construction.—The fiscal court may not appropriate the proceeds of bonds voted by the people of the county for the construction of roads and bridges otherwise than as designated in a resolution of the court adopted before the election; but this rule is not violated if a proportionate part of the proceeds is allotted by donation or otherwise to the construction of a like proportionate part of the designated roads, leaving the other portion of the proceeds to be used upon the other designated roads, although the amount donated is proposed to be expended by n agency (in this case the state) independently of the county.

8. Counties—State Aid in Local Improvements—Bonds.—Where the legislature by statute provides for state aid in the construction of local improvements of a county, such as roads, such provision is in the nature of an offer of a bounty or a gratuity by the state to the county and may be withdrawn, by repealing or modifying the statute, at any time, and especially before acceptance by the county and before rights are acquired thereunder; and such withdrawal will not affect the validity of an election authorizing the issuance of county bonds to be used in the construction of the public enterprises in aid of which the repealed statute offered the bounty or gratuity of the state.

D. L. THOMPSON, County Attorney, and WAUGH & HOWERTON for plaintiff.

CHAS. I. DAWSON, Attorney General, M. S. BURNS, A. J. GARRED, J. W. WOODS, R. C. McCLURE and JACK MAY for defendants.

OPINION OF THE COURT BY JUDGE THOMAS—Overruling motion to grant injunction.

The purpose of this suit, filed in the Lawrence circuit court by Lawrence county on relation of the county attorney against the fiscal court of the county and others, was to enjoin the fiscal court from carrying into execution a resolution which it is claimed to have passed at a special session held on December 29, 1920, wherein it proposed to donate to the Commonwealth of Kentucky the sum of $125,000 to be used in the construction of a public highway running through the county, which forms a part of a proposed state highway traversing the eastern part of the state to be known as the Mayo Trail, and which in turn is a part of Project No. 6 of the system of state highways provided by an act passed by the General Assembly at its 1920 session, which is chapter 17, Session Acts 1920, page 76. Upon the hearing of the motion for the injunction the pleadings, consisting of the petition as amended, the answer, and a number of affidavits filed by the defendants were considered and the court

overruled the motion, and plaintiffs have applied to the writer, a member of the Court of Appeals, as is provided by the present sections 296 and 297 of the Civil Code, to review the action of the circuit judge and to grant the injunction.

Many collateral points are discussed in briefs, but it is quite apparent that the grounds relied on to defeat the proposed action of the fiscal court, and in support of the relief sought, may be included in the classifications of (1) that the resolution offering to make the donation was not passed by the requisite number of votes and is therefore invalid; (2) that the legislature is without authority to confer the power on the fiscal court of a county to donate the funds of the latter to the proposed purpose; (3) that in fact the 1920 act does not confer such authority, and (4) that if mistaken in the first three grounds, the fiscal court of the county can not donate the *particular* fund involved, which is one-half of the proceeds of a road and bridge bond issue voted by the electors of the county at an election held on December 20, 1919, before the 1920 act was passed, and which bonded indebtedness was stated in the petition calling for the election to be for the purpose of constructing four designated roads in the county, and that to donate any part of the funds arising from a sale of the bonds would pervert the purpose for which they were voted. These contentions will be disposed of in the order named.

1.   The record discloses that there are seven justices of the peace in Lawrence county, who with the county judge compose the fiscal court. (Section 144 constitution). It is stated in brief that there are eight justices in the county, but from the view we take of the case (as hereinafter shown) it makes no difference whether there were seven or eight in the county, although under the condition of the record we are not authorized to consider any other number than seven. The records of the fiscal court affirmatively show that on the day the questioned resolution was passed there were seven justices present and the county judge; that a roll call of the justices showed four votes cast for the resolution and three against it. The record is silent as to the action of the county judge. Immediately following the recorded vote, and, as it seems, a part of the same proceedings, an order was made by the fiscal court directing a sale of $125,-000 of the bonds and appointing the county judge trustee of the funds arising therefrom and authorizing him to

"pay same out on estimates furnished by the State Highway Commission, 50 per cent. of said estimates each month out of said funds until the total sum of $125,000 is expended and he is hereby ordered not to exceed this amount."

The argument is made on behalf of plaintiff that the county judge is a member of the fiscal court, which is true, (Bath County, etc. v. Dougherty, Commissioner, 113 Ky. 518, and Stevens v. Wilson, etc., 115 Ky. 27) and that he with the seven justices of the peace, who were present when the resolution was considered, made eight members of the court present and that it was necessary in order to carry the resolution for it to receive five votes, and having received only four votes, it failed to pass and conferred no authority upon the fiscal court to do any of the things proposed therein. It is not disputed but that the seven voting members constituted a quorum of the entire membership of the court, even if we consider that there are eight justices of the peace in the county, and that according to parliamentary rules governing the procedure of representative bodies generally the four votes cast for the resolution were a majority of that quorum and would under such parliamentary procedure be sufficient to adopt the resolution. And this accords with section 144 of the constitution, which provides that "A majority of the members of said (fiscal) court shall constitute a court for the transaction of busness." But, it is insisted that section 1837 of the statutes requires that before any proposition shall be adopted by the fiscal court it shall receive the votes of at least a majority of the members *present,* although a majority of the quorum voting upon the proposition may be cast in its favor. That sedtion says: "Not less than a majority of the members of the fiscal court shall constitute a quorum for the transaction of business, amd no proposition shall be adopted unless by the concurrence of at least a majority of the members of the court present." The question, therefore, is, under the condition of the record, was the resolution here involved adopted by a majority of the members of the court present as contemplated by that section? Manifestly there is involved in the answer to this question the further one as to whether the non-voting member (the county judge) who was present, may be treated as voting and, if so, how?

In the case of Ray v. Armstrong, 140 Ky. 800, the question was presented whether an order of the then

State Board of Equalization, which raised the assessed valuation of farm lands, town lots and personal property in Jefferson county 12 per cent. over the amount as returned by the assessor of the county, was legally passed by that board, which consisted of seven members and the state auditor as an ex-officio member, making a total membership of eight. The statute (section 4268) required that five members of the board should constitute a quorum for the transaction of business, and the order or resolution fixing the increased valuation received only four votes when the entire membership of the board was present, and there were three votes cast against it, the chairman of the board, who was the auditor of public accounts, not voting. Sustaining the validity of the resolution this court said:

"But in this instance all the members were present— eight. Four voted to raise the assessment of Jefferson county, and three voted against the proposition. Four is not a majority of eight. The remaining member, though present and sitting in the board, did not vote. What is the legal effect of this conduct? If it be held that his not voting had the same effect as if he had been absent, it would belie the facts. For he was not absent. His silence should, we think, be construed as concurring with the majority. His silence is acquiescence rather than opposition. His refusal to vote is, in effect, a declaration that he concurs with the majority. Otherwise he should vote against the majority, which would have defeated the proposition. (Rushville Gas Co. v. City of Rushville, 6 L. R. A. 315; Wilcock, Corp. section 546; State v. Green, 37 Ohio St. 227; Luntz v. People, 113 Ill. 137; Cass County v. Johnson, 95 U. S. 369; St. Joseph Twp. v. Rogers, 83 U. S. 16; State v. Renik, 37 Mo. 270; Everett v. Smith, 22 Minn. 53; Oldknow v. Wainwright, 2 Burr. 1017; First Parish, etc. v. Stearns, 21 Pick. 148.)"

The doctrine of the Ray case was held by this court, in the csae of Morgan v. Champion, 150 Ky. 396, to apply to the proceedings of fiscal courts. The question there involved was the ratification by the fiscal court of the appointment of a county road engineer by the county judge, which ratification is required by section 4325 of the statutes, and the fiscal court of Anderson county (whose action was under consideration) consisted of six justices of the peace and the county judge. The ratification of the appointment by the county judge re-

ceived only two votes and there was nothing in the record to show that the other members who were present were given an opportunity to vote. It was because of the latter fact that the court, in its opinion, held that the appointment was improperly ratified. But it expressly referred to and approved the doctrine of the Ray case, saying: "If we should support an order of the nature made in the case here and should apply the doctrine of the Ray case (which is sound and should be applied), the presiding officer of the county court would only need to call for an affirmative vote, and then by failing or refusing to take the negative vote, to have the record showing them as not voting and, therefore, silent and acquiescing. The order only shows the affirmative vote of two of the magistrates and does not show that the remaining four ever had an opportunity of expressing their consent to or disapproval of the appointment. Under this condition, their silence is not to be assumed to be a consent within the intent of the statute." Unlike that case, the record here affirmatively shows that more than a quorum of the fiscal court voted on the proposition.

Under these authorities we gather the rule to be that when the requisite number of the body to form a quorum is present and has an opportunity to and does vote upon a proposition, those members who are present and do not vote will be considered as acquiescing with the majority and their silence construed as they voting with the majority. But we must confess that were it not for the cases, *supra,* we would have some hesitation, in view of section 1837 of the statute, in arriving at that conclusion. However, we think that it is better for the rule to remain as settled by the above cases, which casts responsibility upon the non-voting members under the circumstances, than to disturb what may have become a settled rule of procedure in reliance on them.

2. A county is one of the public territorial divisions of the state. It is organized and given its existence for local public purposes, which are connected more or less with the administration of the state government and, generally speaking, the legislature may confer upon it such powers as are not forbidden by the constitution, and such as do not violate the fundamental maxims of right and justice with respect to which all governments, as well as sub-divisions thereof, are supposed to be organized. An illustration of an effort to do the latter will

be found in the case of Campbell County v. City of New-
port, 174 Ky. 712. In support of the general control the
legislature may exercise with respect to conferring
power and authority upon counties we refer to Ameri-
can and English Encyclopaedia of Law, 2nd edition, vol.
7, pages 937, 966 and 967, and 15 Corpus Juris, 591-592.
In the volume of American and English Encyclopaedia
of Law, referred to, page 966, it is said: "The legislature
may, unless restrained by the constitution or some one or
other of those fundamental maxims of right and justice
with respect to which all governments and societies are
supposed to be organized, exercise control over the coun-
ty agencies, and require such public duties and functions
to be performed by them as fall within the general scope
and objects of the county organization." Further along
on the same page it is said: "The revenues of a coun-
ty are not the property of the county in the sense in
which the revenue of a private person or corporation is
regarded. A county is a mere agency of the state gov-
ernment, and so its property and revenues are subject, to
a large extent, to legislative control, limited as it may be
by the organic law." In the volume of Corpus Juris, re-
ferred to, on page 591, the text says: "However, to the
extent that it is not restrained by constitutional provi-
sion (to which may be added, the violation of fundamen-
tal maxims of right and justice), the legislature has
power to authorize counties to aid in the construction of
railroads or other works of internal improvement, by ap-
propriations, *by donations,* or by subscriptions to stock,
within whatever limitations as to amount or otherwise
are imposed by the state constitutions." Within the
power of the legislature to confer authority upon muni-
cipalities and counties is the one to permit them to give
aid to the construction of such public improvements,
such as turnpikes, as is stated in vol. 20 American and
English Encyclopaedia of Law, 2nd edition, page 1086,
where the text says: "Turnpikes, plankroads, and can-
als are considered public enterprises, and municipal cor-
porations may be authorized by the legislature to grant
aid to companies formed for their construction." In
the exercise of such authority by the legislature a num-
ber of counties of the state, at various times, have been
granted the power to aid in the construction of public
improvements within its borders; and up to the adoption
of our present constitution many of the counties were

authorized to, and did, aid in the construction of quasi public improvements, such as the construction of railroads, and aided others engaged in a similar character of service. To prevent the rapidly growing disposition on the part of the counties to become indebted in the latter class of enterprises, the convention, which framed our present constitution, adopted section 179, which, so far as our present necessities require, says: "The General Assembly shall not authorize any county or subdivision thereof, city, town, or incorporated district, to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association or individual, *except for the purpose of constructing or maintaining bridges, turnpike roads or gravel roads.*" It will be observed that the italicised part of the section expressly recognizes the right of the legislature to authorize the respective counties of the Commonwealth to appropriate money for the construction or maintenance of bridges, turnpike roads or gravel roads. The only limitations in the constitution upon the power of the legislature to confer authority upon the various counties of the state, in respect to the matters now under consideration, are found in the section just referred to, and in section 171 of that instrument, saying that, "Taxes shall be levied and collected for public purposes only." Under these authorities it would be incompetent for the legislature to authorize a county to expend, or donate its revenue raised by local taxation, for any other than a public purpose, which should be a local one and appertain to the local governmental functions of the county. Hence, under the authority of the case of Campbell County v. City of Newport, *supra,* power could not be conferred upon a county to appropriate or donate its funds for a purpose wholly and entirely foreign to its local needs, since such an expenditure would violate the fundamental maxims of right and justice with respect to which the county was organized.

The road, in the constructoin of which the donation by the county of Lawrence is proposed to be made, lies entirely within the county, and it is an internal improvement, which, under the law as it existed prior to the 1920 act, was required to be maintained exclusively by the county, and it is such a local public purpose as that the county may lawfully donate its funds to aid in its con-

struction. The county not only thereby obtains the road for the benefit of its people, but under the terms of the act it is relieved from maintaining the road after it is constructed. There being nothing in our constitution to prevent the legislature from granting such authority to a county, and section 179, impliedly at least, conferring such authority on it, we conclude that there exists no lawful obstacle in the way of the legislature granting to any county of the state the authority to donate its funds in aid of the construction of roads within its borders, whether they be originally constructed by the county itself, or by some other independent agency.

Much is said in brief of counsel for plaintiff about the fiscal court of a county not having authority to delegate its powers to others (the State Highway Commission in this case) and in support of this contention the cases of J. I. Case Threshing Co. v. Commonwealth, 177 Ky. 454 and O'Kelly v. Lockwood, 154 Ky. 554, and cases referred to therein, are relied on. But the doctrine of those cases does not apply to the facts we have here. The delegation of the authority, which is denied in those cases, is a *discretionary authority,* lodged with the fiscal court in the management of the public affairs of the county, and especally in the expenditures of its finances, but none of those cases denies the right or the authority of the fiscal court to employ or designate another to construct a public improvement, or to perform the mechanical work of executing any other public duty. If, in this case, the fiscal court had undertaken to delegate to some other functionary or agent the authority or power to determine whether the donation of the funds of Lawrence county should be made for the purposes proposed, then the doctrine of those cases would apply, but we have no such case here, and the cases relied on are not pertinent. On the contrary, it would seem that, independently of the 1920 statute the fiscal court, under the doctrine of the cases of Orphans' Society of Lexington v. Fayette County, 6 Bush 413, and Board Trustees House of Reform v. City of Lexington, 112 Ky. 171, the fiscal court of Lawrence county, under the facts of this case, was authorized to make the donation involved to the state highway commission for the purpose of constructing roads within the county, since that duty was already expressly imposed upon the county by statute and the procuring of the state through its

highway commission to perform it was but the adop-
tion of a means to an end. There was no delegation of
the fiscal court's right and authority to adopt the means.

3.   If we are correct in what has been stated in the
last sentence above the contention made in ground (3),
if true, would not affect the merits of the case; but it is
our conclusion that the language of the 1920 act is broad
enough to grant the authority (contested in this case) to
the fiscal court of Lawrence county.   In saying this we
do not overlook the ruling of this court  in  the  case · of
Russell County v. Hill, 164 Ky. 360, and others to the ef-
fect that fiscal courts may not make appropriations, nor
levy taxes, nor perform any act with reference to the col-
lection and disposition of public funds without statutory
authority for the purpose, and that statutes purporting
to confer such authority must not be extended by con-
struction ''beyond the natural and fair meaning of the
words used,'' and that the granting of such authority
must be strictly construed.

In the latter part of section 5 of the 1920 act, after
providing the fund, which the state might employ for the
construction of the system of roads created, and, declar-
ing that after construction they should be maintained en-
tirely by the state, it is said: ''But nothing herein shall
prevent any *county,* municipality, association, firm or in-
dividual from making a donation to the state in aid of the
construction or maintenance of any of the said roads of
the state, and the state shall have the right to accept any
donation on the terms and conditions prescribed by the
state highway commission.''   Our conclusion is that the
''fair meaning of the words used'' is sufficient to confer
the authority proposed to be exercised.   To hold other-
wise would convict the legislature of the employment of
meaningless and useless words; for, how could a county
donate to the state in aid of the construction or mainten-
ance of the roads provided for without the power and
authority to do so; and how could the state highway com-
mission negotiate with a county in prescribing the terms
upon which the donation would be accepted without any
power in the county to make the donation?   The fair in-
ference is that it was the intention of the legislature to
confer such authority upon the county and we think, un-
der even the strict construction rule, the language em-
ployed is sufficient for that purpose.

4. It is seriously insisted that under the doctrine announced in the case of Scott. v. Forrest, 174 Ky. 672, the proposed donation involved in this case is a perversion of the proceeds of the voted bonds from the purpose for which they were voted and, therefore, the fiscal court is without authority to make it. In that case the fiscal court of Metcalfe county, after the petition for the election had been filed and the election called, but before it was held, entered an order designating certain roads upon which the proceeds of the proposed bond issue would be expended and in the resolution application was made to the state, under the then existing State Aid plan, for a like amount to be expended by the state on the same roads. After the bonds had been voted, the fiscal court entered an order directing that the entire proceeds be divided between the magisterial districts of the county, naming therein certain roads which were to be improved with the funds and which named roads were not those designated in the order made by the court prior to the election. The suit was filed for the purpose of enjoining the execution of the order dividing the funds between the magisterial districts, and to compel the fiscal court to improve the roads designated in the first order, and on appeal the judgment of the lower court sustaining the injunction was affirmed. In the opinion it is said: ''Since the order was made prior to the election and at a time when the voters were interested in knowing on what roads the proceeds of the bonds would be used, it can not be doubted that the voters had the right to rely on the fact that the order expressed the final determination of the fiscal court and to cast their ballots accordingly. Under these circumstances, the order was, in effect, a contract with the people, and good faith requires that the contract be kept. A contrary rule would permit fiscal courts to apply money, voted by the people for one purpose, to another and different purposes for which it would not have been voted had the people been apprised in advance of such intended action.'' If the facts in this case were analogous to those in that case, there could be no doubt but that the injunction herein prayed for should be granted. We find, however, no analogy in the facts of the two cases. In the first place, there was no order made by the Lawrence fiscal court before the election in that county of December 20, 1919, designating any particular road or

roads of the county which should be first (or at all) constructed; but, as hereinbefore stated, the petition asking for the election did make such designation. If we should treat the petition as having the same force and effect in this regard as an order of the fiscal court (a question which is not determined) then we find that two of the four roads designated in the petition are: ''One road up Lick Creek, and across the Patrick Gap, to the Levisa River road, and up the Levisa River road to Georges Creek; thence the most direct and practical route to the Johnson county line,'' and ''One road from Louisa, the most practical route to the Riffe Cross roads, on East Fork, by way of Miller Branch; thence to the Boyd and Carter county lines.'' From a map, made part of the record, we learn that the other two designated roads in the petition do not have the combined length of the above two incorporated herein. From eleven affidavits, filed and used as evidence upon the hearing below, one of which was made by the division engineer of the state road department, with none to the contrary, it appears that the proposed Mayo Trail through Lawrence county, for the construction of which the proposed donation is made, is identical with the two roads hereinbefore set out and runs along the most practical routes from Louisa to the Boyd county line by way of the points mentioned, and from Louisa to the Johnson county line by points therein mentioned. So that the proposed donation or expenditure of one-half of the proceeds of the bonds will not be diverted from the purpose for which they were voted as was proposed to be done in the Scott case, *supra,* which fact eliminates from this case the ground upon which the opinion in that case was rested. The remaining $125,000 of the bond issue may be spent by the fiscal court of Lawrence county on the other two roads designated in the petition, and thus the understanding of the voters at the time of the election will be literally carried out and there will be no violation on the part of the fiscal court of any contract or good faith with the people of the county. We therefore conclude that the doctrine of the Scott case, *supra,* does not apply here.

Considerable argument is indulged in to the effect that when the election authorizing the issuance of the bonds was held there was in existence what is known as the State Aid plan for the construction of certain roads in the various counties, and that the bonds were voted

with the understanding that the county would receive that aid from the state and that now, since the 1920 act has withdrawn it, the proceeds of the bonds may not be expended for any other purpose. A sufficient answer to this is that the funds proposed to be furnished by the state to the counties under the State Aid plan were in the nature of a bounty or a gratuity which the state might withdraw at pleasure, or especially so at any time before acceptance by a county, (State Board of Charities and Corrections v. Hays, 190 Ky. 147) and having done so the fiscal court of the county may appropriate or expend the proceeds of the bonds in the construction and main- tenance of the roads within its borders as though the sys- tem for the construction of roads under the State Aid plan had never existed, since the wthdrawal of that plan by the 1920 act did not lessen the obligations of the coun- ty to construct and maintain its public roads. When, therefore, one of its public roads, under the present scheme, is proposed to be constructed by the state (part- ly with its funds and partly with the proposed donation from the county) and forever thereafter maintained by the state, the county is actually benefited by the opera- tion.

Upon the whole case we conclude that the order at- tacked is valid and the injunction was properly refused. Chief Justice Hurt and Judges Quin and Clay considered this motion with the writer and concur in this opinion, which is ordered to be published in the official Reports and in the Advance Sheets.