## Rice v. Marcum, County Treasurer, et al.

May 28, 1943.

A. T. W. Manning for appellant.

Roy W. House for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The fiscal court of Clay county duly called an election to be held in the county on April 28, 1919, to determine whether or not the county should issue its bonds in the sum of $200,000 "for the purpose of building roads and bridges." The election resulted in approving the issue. Prior to March 1, 1936, the state Highway Commission pursuant to authority conferred upon it, concluded to construct highway No. 80 traversing Clay county, and highway No. 11 traversing a part of the county, between the points of Caution and O'Neida. Under our highway statutes the right of way for state highways must be paid for by the county and not by the state with its road fund. In order to procure the necessary right of ways as required by the Highway Department for the construction of the above roads in Clay county, its fiscal court sold a balance of $6,000 of its voted bonds in the election held in 1919 in order to raise funds to procure the right of way for the proposed state roads, which was done, and the proceeds were so expended and the roads constructed—the sale of the remaining amount of unissued bonds ($6,000) having been made on March 1, 1936, and the acquisition of the right of ways obtained soon thereafter.

On January 3, 1940, this action was filed in the Clay circuit court by appellant, Chester Rice, a taxpayer of the county, for himself and all other taxpayers, against the county treasurer, the county judge, all of the members of the fiscal court who were such officers on March 1, 1936, and the sureties on the bonds of each of them, seeking to recover from defendants, for the benefit of the county, the alleged misappropriation of the proceeds of the sales of the remaining unissued county bonds, and expending such proceeds for the alleged unauthorized purpose of acquiring the right of ways referred to, and, which alleged liability—and plaintiff's alleged right to enforce it—is rested on section 4281u-2 of Carroll's Ken-

tucky Statutes, 1936 edition (68.100, KRS). In that section it is provided, inter alia, that if the county attorney fails to prosecute the action therein given within six months after the misappropriation, then it may be maintained by a taxpayer suing for himself and other taxpayers for the benefit of the county. So that, the action is maintainable as brought; provided the facts created a misappropriation of the involved fund arising from the sale of the unissued bonds on March 1, 1936. A number of practice steps, such as demurrers, motions, etc., were made, when finally an answer was filed denying the alleged misappropriation as charged in the petition, and in a second paragraph alleging facts justifying it, which were: That at the time the tax was voted in 1919 neither the order calling that election, nor any statute of this commonwealth, forbade the expenditure of voted bond funds for the acquisition of right of ways for state highways constructed by the state Highway Commission, but that the then law only prescribed—as did the order calling the election in this case—that such proceeds should be devoted only to the "construction and maintenance of roads and bridges." Other practice steps then followed, when the cause was submitted to the court and it dismissed the petition, from which plaintiff prosecutes this appeal.

In the cases of Scott v. Forrest, 174 Ky. 672, 192 S. W. 691, and Montgomery County Fiscal Court v. Duff, 227 Ky. 508, 13 S. W. (2d) 515, and many others cited in those two opinions we held that the terms prescribed in the order calling such an election as here involved— as well as the existing statutory law at the time—created a contract between the taxpayers of the county in which the election was held and the county, binding on each of them, and which came within the provisions of section 19 of our Constitution and section X of Article I of the Federal Constitution inhibiting the impairment of a contract by the state. Plaintiff rests his case upon the theory that the existing statute at the time the Clay county bonds were voted expressly inhibited the expenditure of their proceeds for the acquisition of right of ways by the county for the purpose of construction of state highways, and that such statutes then in force expressly required the county to acquire such right of ways with its general funds; but we have examined section 4307 of the 1922 edition of Carroll's Kentucky Statutes, as well as the same section in volume 2 of the 1915 edi-

tion of the same Statutes, and we find that the only statutory requirement with reference to the expenditure of the proceeds of such voted bonds was that they should be used "solely and alone for the building, construction, or reconstruction of roads of asphaltum, concrete, brick, stone' block, macadam, gravel or other processes of equal merit." Section 4356x, subsection 18, in volume 2 of the 1915 edition of the statutes relating to the construction of state highways only requires that the right of ways of a state highway shall not be paid for with state road funds, but shall be acquired solely by the county without specifying what particular county funds shall discharge that obligation.

The legislature at its 1920 session enacted chapter 17 in the session acts for that year creating the department of State Roads and Highways, providing state projects, etc. In section 7 of that act it is expressly prescribed, inter alia, that "No portion of the cost of acquiring any necessary land or right of way * * * nor any part of any damages incurred, awarded or paid, shall be paid out of the State Road Fund, but all costs of acquiring any necessary land or right of way and any damages incurred, awarded or paid shall be paid by the county *out of its general fund,*" (Our emphasis.) which, so far as we have been able to ascertain, is the first time that counties were expressly required by statute to pay for right of ways for state highways with and out of its General Fund. Hence, after the passage of that act we, in a number of cases, held that the proceeds of voted road and bridge bonds could not be devoted to the acquisition of such right of ways, but which was rested entirely upon the express terms of the 1920 act and not on any holding by this court that the acquisition of such right of ways by the county with proceeds of voted bonds was not a necessary part of constructing roads and bridges for which the bonds were voted.

Plaintiff's counsel, in brief filed in this court, refers to the 1920 act, and says: "And that (1920 act) was the law at the time the voters of Clay county approved the bond issue of $200,000.00 for building roads and bridges in Clay county." But, as we have seen, there was no provision in any statute prior to the 1920 act when the election was held in 1919 expressly requiring that the right of ways for state highways should be paid by the county out of its general fund, which requirement was first put into

the law by the 1920 act. Therefore, counsel's statement to the contrary is a misinterpretation of the statutory law in force at the time of the involved election, on that specific and material question.

However, the legislature at its 1928 session, by chapter 180 of the session acts for that year modified that portion of the 1920 act by providing that "all cost of acquiring any necessary land or right of way and any damages incurred, awarded or paid shall be paid by the county out of its general fund, or out of funds voted and held by the county or its duly appointed and qualified road commissioners for the purpose of improving or constructing, either or both, the roads and bridges of the county." So that, there was a period following the voting of the bonds here involved by Clay county, between 1920 and 1928 when such right of ways was expressly required by statute to not only be paid for by the county, but only and solely out of its general fund. However, as we have seen, the bonds in this case were voted before any such requirement was enacted prohibiting such payments for the acquisition of right of ways out of voted bond funds; in which case the proceeds could be devoted by the fiscal court for any purpose embraced in or comprehended by the phrase "construction of roads and bridges," and which was, as we have seen, the express purpose for which the issuing of such bonds was voted. Therefore, the sole question for determination is whether or not the expenditure by the fiscal court of Clay county of the fund here involved was an appropriation of the bond issue fund for a purpose not necessarily incidental to or a part of the construction "of roads and bridges" —there being nothing, either in the order of submission of the bond issue, or by any then controlling statute, excluding the payment for right of ways out of proceeds of the bond issue? The case, therefore, is not controlled by the law applicable to the issue of "conditional" bonds as were those involved in the Duff case supra, and others referred to therein, unless it may be said—as contended by counsel for appellant—that money expended for the obtention of right of ways upon which to construct state roads is not embraced within the phrase "construction and maintenance of roads and bridges."

In the recent case of Grauman v. Department of Highways, 286 Ky. 850, 151 S. W. (2d) 1061, 1063, the question was presented as to whether the erection of a

signal light to direct traffic was a part of the maintenance of a highway, and we held that "While not actual construction of the highway, itself, such expense is incident to a safe and efficient road system. If expenditure for such purposes are to be classified as construction and maintenance, we see no reason why the traffic signal in question does not fall within the same category." To the same effect is the prior case of Lawrence County v. Lawrence Fiscal Court, 191 Ky. 45, 229 S. W. 139. We, furthermore, said in the Grauman case, in defining the comprehension of the term "construction and maintenance" that "It can hardly be doubted that the term 'construction and maintenance' of the highway has a broader meaning than that of construction and maintenance of the actual road bed. We think the term is broad enough to include everything appropriately connected with and incidental to the construction and maintenance of an efficient road system," etc. The same principle was approved by us in the case of Crick v. Rash, 190 Ky. 820, 229 S. W. 63. If, therefore, the complained of expenditure is valid when made for anything "appropriately connected with and incidental to the construction and maintenance of an efficient road system"—as held in the 286 Kentucky case—under a general limitation to expend the voted bond funds for "construction and maintenance of roads and bridges," it is obviously certain that an expenditure for the acquisition of a right of way could be considered in no other light than "incidental to the construction and maintenance of an efficient road system," when the expenditure was made under the same limitation, since it is axiomatic that a road can not be constructed—much less maintained—without a right of way upon which to construct it. It can not be constructed or maintained in the air, but requires a surface foundation upon which to build it.

The proposition is too obvious to require discussion, and the only reason why some of our former opinions drew such a distinctive purpose for which voted road bond funds might be expended by the fiscal court of a county was because the statutory law at the time the involved bonds were voted had made such distinction in express and mandatory terms. Since, however, no such statute was in existence at the time the complained of expenditure was made in this case no such statutory mandate existed and, independently thereof, no logical objection exists.

492

Wherefore, for the reasons stated, the judgment is affirmed. The whole Court sitting.