**Mrs. F. W. MITCHELL, Sr., and F. W. Mitchell, Jr., Appellants,**

**v.**

**Jay FRANKLIN, Appellee.**

Court of Appeals of Kentucky.

Dec. 3, 1965.

Rehearing Denied Feb. 25, 1966.

James F. Clay, Danville, for appellants.

George R. Silliman, Danville, for appellee.

JAMES S. SHAW, Special Commissioner.

Jay Franklin, a tenant, sued the Mitchells, mother and son, Boyle County farm owners, for damages resulting from serious physical injuries he received as a result of a fall from a barn being repaired on the Mitchell farm. Upon submission to a jury, a verdict of $6733.35 was rendered and judgment thereafter entered in his favor. The Mitchells appeal, urging a reversal upon the theory that they were entitled to a directed verdict, pursuant to a timely motion made therefor.

There is no great contradiction in the essential facts surrounding this unfortunate accident. The Mitchells, as a part of the farm improvements, had an old tobacco barn in need of repairs, particularly some sliding doors which were dragging. "Stubs" supporting the barn framework had sunk causing these doors to sag. To cure this, Mitchell and Franklin proceeded, with the help of one Jack Davis, to remove the doors.

They took down the boxing, so that the large wooden posts could be jacked up in order to level the stubs on which the posts rested, thus putting the sliding doors back into a functional condition. The sliding doors were attached to a tubetype track mounted on the exterior of the barn. This track was bolted to 2″ x 6″ planks located inside the barn. There was a 2″ x 4″ plank that was nailed to the sheeting and which supported the tier rails running inside the barn. In order to jack up the large wooden posts, it was necessary to remove the 2″ x 4″ and the 2″ x 6″ planks; and, to do this, Franklin removed the track by taking out the bolts, then removed enough of the boxing to allow him to climb on the framework of the barn in order to finish the job.

Taking a pinch bar and, with one foot on the 2″ x 6″s and the other on the tier rail supported by the 2″ x 4″s, he proceeded to take off the boxing until he was about two-thirds of the way across the barn doors. There being insufficient support from the

nails remaining in the 2″ x 4″s, attaching it to the boxing, the 2″ x 4″s gave way, the tier rails, upon which Franklin was partially standing, fell, the 2″ x 6″s collapsed, with the result that he was propelled to the ground receiving serious bodily injuries.

The Mitchells contended in the trial court, and reiterate here, (1) That they were under no duty to furnish Franklin additional help, or to furnish a safe place to work; (2) that Franklin was guilty of contributory negligence; and (3) that he assumed the risk of injury in this undertaking.

Franklin rests his case on the opinion of this Court in E. J. O'Brien and Company v. Shelton's Adm'r., 246 Ky. 537, 55 S.W.2d 352, basing his stand on the evidence of the witness, James Walker, that a safer method to repair the barn was available to the appellants. We believe, and we now hold, that the O'Brien case is not analogous to the one now under discussion. We will therefore attempt to differentiate between it and the one now under scrutiny.

First, E. J. O'Brien and Company, having failed to elect to work under the Workmen's Compensation Act, were deprived of the defenses of assumed risk and contributory negligence, both of which are available to the Mitchells in this case and both of which are heavily relied on to defeat Franklin's claim. Secondly, and even more important, the dangerous condition was not created during the progress of the work, but was one that existed before the demolition began in the O'Brien case. In the instant case, no dangerous condition existed until such was set in motion by the servant in removing the supporting nails for the 2″ x 4″ and 2″ x 6″ planks. The barn involved here was many years old when purchased by the Mitchells and there is not the slightest bit of evidence that they knew, or could have known, before this accident of any defective condition in the nailing of the plank supports, but, on the contrary, the only inference that can be drawn from the facts by a reasonable mind is that Franklin was the only person who could discover any such condition while he was in the act of removing the nails from the supporting planks.

Where the evidence is such that different inferences may legitimately be drawn therefrom, then contributory negligence and, for that matter, assumption of risk should be submitted to the jury. In the instant case, the evidence is conclusive that the servant's own negligent act in removing with the pinch bar his supports, the 2″ x 4″s and the 2″ x 6″s, caused him to fall to the ground with painful injuries. His position in this cause is not unlike that of the person who climbed out to the far end of a tree limb, proceeded to saw off the limb, and was cast to the ground.

The general rule is that an employee or servant shall be denied the right to recover for injuries and damages, where his own neglectful act has been the proximate cause of his injuries. From the evidence here it appears no other reasonable conclusion could be reached than that the injuries were proximately caused by Franklin's own unfortunate negligent acts.

We are of the opinion that the principles of law controlling in this case are as set out in Ballard & Ballard Co. v. Lee's Adm'r., 131 Ky. 412, 115 S.W. 732, and Standard Oil Co. of Kentucky v. Watson, 154 Ky. 550, 157 S.W. 929. Quoting from the Standard Oil case this Court held:

"The law does not impose upon a master engaged in the hazardous work of tearing down an old building the duty of inspecting it, so that his workmen may have a safe place to work; and certainly in this case it would be requiring too high a degree of care to say that it was his duty to have known that there was a knot in any particular timber in the old house that was being torn down, or that the knot ran through the timber at such an angle as to make it dangerous to his workmen. If the master may be mulcted in damages for his failure to discover such

defects, or if he must, before undertaking such work, or during its progress, go to the expense and trouble of having a minute examination made of all such timbers, it would make the expense of tearing down an old house almost as great as building a new one.

"The cause of this injury was the knot in the beam and the manner in which it ran through it, and we are unable to see from this evidence how the master could, with any ordinary degree of care, have known of the knot, to say nothing of the manner in which it ran through the beam. To require a master to examine every timber in an old house that was being torn down would be most unreasonable, and we do not see how the foreman in this case could have been expected to know that the particular beam in question was defective. Of course, if he knew that it was defective, it was his duty to warn the workman of the defect."

■ It should also be considered that there is an exception to the general rule of the master's liability to his servant with respect to hazardous and unsafe conditions and this exception is stated in 35 Am.Jur., Master and Servant, sec. 187, p. 615, as follows:

"The rule requiring the employer to make safe the place where his employees are at work is said to be subject to an exception where the conditions of the place are constantly changing as the work progresses, as where a building is in the course of being constructed or demolished. * * *"

This exception is generally recognized throughout the country and Kentucky has long followed this rule, as can be readily seen by reading the Ballard and Standard Oil cases cited above.

■ Following the reasoning as set out in this opinion to its ultimate conclusion, we believe that no negligent act on the part

of the Mitchells could be said to be the cause of Franklin's injuries and that the unfortunate occurrence resulted undesignedly and unexpectedly as a result of the contributory negligence on the part of Franklin. We are now of the opinion that the lower court is in error, the judgment should be reversed with directions to set same aside and to dismiss Franklin's complaint.

It is so recommended.

The opinion is approved by the Court and the judgment is reversed and directed to be set aside, and the trial court is further directed to dismiss the complaint.