## Scott v. Forrest, County Judge, et al.

### (Decided March 16, 1917.)

### Appeal from Metcalfe Circuit Court.

1. Counties—Roads—Bond Issue—Fiscal Courts—Selection of Roads Before Election—Power of Fiscal Court After Election.—Where a fiscal court, prior to an election on a road bond issue, names the roads to be constructed with the proceeds of such issue and the issue is carried on the faith of such order, the fiscal court is without authority thereafter to repeal or amend the order and thereby defeat the purpose for which the bonds were voted.

2. Counties—Roads—Fiscal Courts—Order—Interpretation.—A resolution of the fiscal court adopted prior to a bond issue election, considered, and held not to have provided for the order in which certain roads named therein should be constructed.

3. Mandamus—Roads—Fiscal Courts.—Where the members of a fiscal court are under a clear legal duty to select one of four roads as the first road to be constructed with the proceeds of a bond

issue, mandamus will lie to compel them to meet and select one of said roads, but not to control their discretion in making such selection.

W. L. PORTER and BAIRD & RICHARDSON for appellant.

W. S. SMITH, LARIMORE & WHEELER, J. W. KINNAIRD and W. R. LYON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming both on the original and cross appeals.

On January 24, 1916, the county court of Metcalfe county, pursuant to a petition signed by the requisite number of legal voters and freeholders, entered an order directing an election to be held on Saturday, March 25, 1916, in Metcalfe county, to submit to the voters the question whether they were in favor of issuing $30,-000.00 in bonds for the purpose of building roads and bridges.

On February 24, 1916, the fiscal court entered the following order:

"Be it resolved that the public interest demands the improvement and construction of a public road on the following established routes or as near thereto as practical, it appearing that for the year 1915 there was collected and disbursed for road and bridge purposes in Metcalfe county the sum of approximately four thousand and two hundred dollars ($4,200.00) as shown by sheriff settlement on file in this office.

"The Edmonton and Glasgow road leading from Edmonton to Glasgow by the way of Wisdom to the Barren county line, a distance of about nine miles.

"The Edmonton and Horse Cave road and Center to the Hart county line, the distance of about twenty miles, the Edmonton and Columbia road by the way of Gascon to the Adair county line, a distance of about eight miles, and the Edmonton and Tompkinsville road by the way of Good Luck to the Monroe county line, a distance of about twelve miles, same being a portion of the inter-county seat road connecting Edmonton, the county seat of Metcalfe county, with the county seats of Barren, Hart, Adair and Monroe counties in the order above named on the most direct and practicable routes, and it is the sense of this court that said roads be improved

under state aid and state supervision during the year 1916.

"Application is hereby made to the commissioner of public roads for thirty thousand dollars ($30,000.00) of the state road funds to be apportioned to Metcalfe county for the improvement of said roads.

"It appears that this court has not heretofore applied for state aid, it is, therefore, ordered that the Fiscal Court of Metcalfe County petition the State of Kentucky and the State Commissioner of Public Roads for thirty thousand dollars ($30,000.00) of the state road funds for the use of this county, for the improvement of the roads aforesaid and agrees to furnish a like amount.

"In case thirty thousand dollars ($30,000.00) exceeds the amount that may be apportioned Metcalfe county for the year 1916, then in that case, the Fiscal Court of Metcalfe County requests the proportional amount of the state road funds that may be apportioned Metcalfe county.

"It is further ordered that a copy of these resolutions and a copy of this court's order be certified to the Commissioner of Public Roads for his approval."

At the election, which occurred on March 25, 1916, the proposition was carried by the required vote and the result properly certified and entered on the records of the fiscal court.

On April 5, 1916, the fiscal court passed an order providing for the advertisement, sale and issue of $20,000.00 worth of bonds.

At the same meeting a resolution was passed, reciting that the public interest demanded the improvement and construction of the Edmonton and Munfordville road for a distance of ten miles, and that it was the sense of the court that said road be improved under state aid and supervision during the year 1916. In the same resolution application was made for state aid in the sum of $10,000.00.

At a meeting of the fiscal court, held on May 1, 1916, one of the members of the court made the following motion: "That the court adopt the route leading from the corporate limits of Edmonton, Ky., toward Glasgow to the Barren county line by the most practical route, with the provision that the land owners along said route donate the right of way that may be selected and furnish

rock and gravel free along said route." This motion was lost.

At a meeting of the fiscal court, held on July 6, 1916, an order was entered directing that the proceeds of the $30,000.00 bond issue be equally divided between the three magisterial districts and naming certain roads to be improved.

This suit was brought on July 18, 1916, by M. O. Scott against the members of the fiscal court to obtain a mandamus compelling them first to construct the Edmonton and Glasgow road. The petition proceeds on the theory that the order of February 24 designated that road as the first one to be improved, and that the fiscal court was without authority thereafter to amend or change the order. The county attorney answered on behalf of the county and joined in the prayer of the petition. W. A. Rose, a taxpayer, intervened and filed an answer on behalf of himself and others. Answers were also filed by the county judge and two other members of the fiscal court.

On final hearing the circuit court was of the opinion that the Edmonton and Glasgow road was not designated by the order of February 24 as the first road to be constructed. In view, however, of the fact that the people voted for the bond issue in the belief that the proceeds thereof would be used for the purpose of constructing the four roads named in the order of February 24, the court also adjudged that the fiscal court was without authority thereafter to divert the proceeds to other purposes and, therefore, granted a mandamus, directing the members of the fiscal court to assemble at the court house and enter an order cancelling the order of July 6, 1916, and further directing them to determine which one of the four roads mentioned in the order of February 24 should be first constructed under state aid and supervision, and to take such steps in conformity with the statute as were necessary to secure such aid, and to procure from the sale of the bonds sufficient funds for the county's share of the work then directed to be done. The motion to require the members of the fiscal court to select the Glasgow road as the first to be constructed was refused, and the route or road first to be constructed was left entirely to their discretion. From the judgment so rendered, plaintiff appeals, and L. Boston and M. B. Shaw prosecute a cross-appeal.

Plaintiff contends that the order of February 24 not only selected the four roads to be constructed, but determined the order in which they should be constructed, and as the bonds were voted on the faith of this order, the fiscal court was without authority thereafter to rescind or amend its action. On the cross-appeal by Boston and Shaw, it is insisted that the fiscal court, in making the order of February 24, did so purely for the purpose of applying for state aid, and, having acted in a legislative capacity and no contract rights being involved, it was at liberty thereafter to exercise the discretion conferred upon it by the statute and to expend the money upon such roads as it deemed best for the interest of the people. That being true, it is argued that the only order now in force is that of July 6, distributing the money among the magisterial districts. On the other hand, the county judge insists that the ruling of the chancellor is correct.

It may be conceded that the fiscal court, in making the order of February 24, acted in a legislative and not in a judicial capacity. It may be further conceded that, ordinarily, where the fiscal court acts in a legislative capacity and no contract rights are involved, it may thereafter amend or repeal its action. Commonwealth v. Beauchamp, 136 Ky. 227, 124 S. W. 284; Crittenden County Court v. Shanks, 88 Ky. 475, 11 S. W. 468. We take it, however, that this rule is not of universal application. Circumstances may arise which would make its application manifestly unjust and inequitable. In the case under consideration an election had been called by the fiscal court for the purpose of taking a vote on bonds to be issued for road purposes. The order of February 24 was passed about a month before the election was to take place. While it may be true that the main purpose of the order was to apply for state aid, such aid was asked for "the improvement of said roads" and was accompanied by the further provision that the county agrees "to furnish a like amount." The proposed bond issue was for a like amount and the county of Metcalfe had no way of raising that amount except by the bond issue. That being true, it is clear that the order not only applies for state aid, but actually names and selects the roads on which the proceeds of the bonds were to be expended. Since the order was made prior to the election and at a time when the voters were in-

terested in knowing on what roads the proceeds of the bonds would be used, it cannot be doubted that the voters had the right to rely on the fact that the order expressed the final determination of the fiscal court and to cast their ballots accordingly. Under these circumstances, the order was, in effect, a contract with the people, and good faith requires that the contract be kept. A contrary rule would permit fiscal courts to apply money, voted by the people for one purpose, to another and different purpose for which it would not have been voted had the people been apprised in advance of such intended action. We, therefore, hold, that where a fiscal court, prior to an election on a bond issue, names the roads to be constructed with the proceeds of such issue, and the bond issue is carried on the faith of such order, the fiscal court is without authority thereafter to repeal or amend the order and thereby defeat the purpose for which the bonds were voted.

The same rule would also apply if the resolution entered prior to the election fixed the order in which the roads were to be constructed. It remains to determine whether this is true of the order of February 24. In view of the fact that when more roads are petitioned for in any county than can be constructed in any one year, subsection 8, section 4356x of the Kentucky Statutes, confers on the fiscal court, with the consent of the State Commissioner of Public Roads, the power and authority to select from the roads petitioned for the ones first to be constructed, it is argued that the fiscal court in this instance attempted to exercise, and did exercise, this authority by the use of the words "in the order above named." The question will be rendered less difficult if we omit from the order the parenthetical clause with reference to the amount of money furnished by Metcalfe county for road and bridge purposes for the year 1915, and the descriptions following the four roads named. When this is done, the order reads as follows:

"Be it resolved that the public interest demands the improvement and construction of a public road on the following established routes, or as near thereto as practical:

"The Edmonton and Glasgow road, the Edmonton and Horse Cave road, the Edmonton and Columbia road, and, the Edmonton and Tompkinsville road, same being a portion of the inter-county seat road connecting

Edmonton, the county seat of Metcalfe county, with the county seats of Barren, Hart, Adair and Monroe counties in the order above named, on the most direct and practical routes.''

The question will be further simplified by considering the order in the light of section 4356w of the Kentucky Statutes, which provides in part as follows:

''There is hereby created a system of public state highways, which shall consist of roads connecting the county seat of each county of the Commonwealth with the county seats of the adjoining counties by the most direct and practical route, and the county seat of the border counties of the Commonwealth with the state line on the most direct and practical route leading from said county seats to the county seats of the adjoining counties in the adjacent states.''

In other words, one of the objects of the order was to apply for state aid, and to this end the order was drawn in almost the identical language of the statute for the purpose of showing that the roads mentioned connected the county seat of Metcalfe county with the county seats of the adjoining counties by the most direct and practical route. It is clear that in the statute the words ''by the most direct and practical route'' modify the word ''connecting.'' This being true, the natural conclusion would be that the words ''on the most direct and practicable routes'' modify the word ''connecting,'' appearing in the order. For the same reason, we conclude that the phrase ''in the order above named,'' which appears in the same clause and immediately before the words ''on the most direct and practicable routes,'' likewise modifies the word ''connecting.'' Since the four roads named do connect the county seat of Metcalfe county with the county seats of Barren, Hart, Adair and Monroe counties, ''in the order above named,'' this construction not only conforms to the facts, but accords with the ordinary rules of legal interpretation. To sustain the view that the words ''in the order above named'' were used with reference to the construction of the roads, and not to the order in which they connected the county seat of Metcalfe county with the county seats of the adjoining counties, we would not only have to disregard entirely the explanatory purpose of the clause in which they occur, but would have to transpose them from their actual position in the con-

text and make them modify words with which they have neither a natural nor logical connection. We, therefore, conclude that the chancellor correctly held that the resolution of February 24 did not fix the order in which the four roads therein named were to be constructed.

Inasmuch as the fiscal court was without authority to amend or repeal the order of February 24, naming the roads to be constructed with the proceeds of the bonds in question, it was under a clear legal duty to select one of those roads as the first to be constructed. Since the circuit court did not attempt to control the discretion of the fiscal court, but merely required its members to meet and act within the limits of their discretion, it follows that the mandamus was properly granted.

Judgment affirmed both on the original and cross appeals.

Whole court sitting.