## Campbell, et al. v. Hammons, et al.

(Decided October 16, 1917.)

### Appeal from Knox Circuit Court.

1. Counties—Roads—Inter-county Seat Roads—Fiscal Court—Power. —In selecting routes for inter-county seat roads, under the Act of 1914, fiscal courts are not restricted to roads theretofore opened by order of the county court, but may establish new routes.
2. Mandamus—Injunction—Roads—Selection of Inter-county Seat Roads—Fiscal Courts.—In the selection of routes for inter-county seat roads, fiscal courts have a discretion which will not be controlled by mandamus or mandatory injunction.

HAZELRIGG & HAZELRIGG and SCOTT & HAMILTON for appellants.

JOHN M. ROBSION and J. F. CALHOUN for appellees.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

This is a suit by W. H. Campbell and others, citizens and taxpayers residing on Indian creek, in Knox county, against the members of the fiscal court of Knox county, and the State Road Commissioner, to enjoin the construction of an inter-county seat road on the route selected by the fiscal court and approved by the State Road Commissioner, and to compel the defendants to select a different route and to construct the proposed road thereon.

In the year 1915, the qualified voters of Knox county voted in favor of a bond issue of $200,000.00 to be used for the improvement and construction of roads. The validity of the issue was subsequently upheld by this court. Mitchell v. Knox County Fiscal Court, 165 Ky. 543. Prior to the election the fiscal court of Knox county passed a resolution to the effect that the public interest demanded the improvement, construction and reconstruction of inter-county seat roads from Barbourville to London, the county seat of Laurel county, to Williamsburg, the county seat of Whitley, to Pineville, the county seat of Bell, and to Manchester, the county seat of Clay. After the bond issue had been voted, it was apparent that the proceeds thereof were not sufficient to construct and improve all the roads petitioned for. It was therefore necessary to determine what roads should be first constructed or improved. When it came to the selection of the inter-county seat road from Barbourville to the county seats of Laurel and Whitley, it was decided to proceed from Barbourville to Corbin, a connecting point agreed upon by the counties of Laurel and Whitley. At that time the fiscal court of Knox county had before it three proposed routes from Barbourville to Corbin: One paralleling the L. & N. Railroad and referred to as the Railroad Route; another leading up Big Richland creek and referred to as the Northern Route; and the third leading from Barbourville to Smokey creek and referred to as the Southern Route. The fiscal court first selected the Railroad Route, which did not meet with the approval of R. C. Terrell, who was then State Road Commissioner. Thereupon the fiscal court selected the Big Richland creek route, or the Northern Route. This selection was also rejected by Mr. Terrell, who directed the fiscal court to make a survey of the Smokey creek route, which the fiscal court failed to do.

Some time later Mr. Terrell's term of office as State Road Commissioner expired, and Hon. Rodman Wiley was appointed in his stead. Thereupon the fiscal court again selected the Big Richland creek route, which was then approved by Mr. Wiley. The purpose of this suit is to enjoin the construction of the road on the route thus selected and to require the members of the fiscal court and the State Road Commissioner to. select the Smokey creek route and to construct the inter-county seat road thereon.

Section 4356w, Kentucky Statutes, being a part of chapter 86, Acts of 1914, provides that there is hereby created a system of Public State Highways, which shall consist of roads connecting the county seat of each county of the Commonwealth with the county seats of the adjoining counties "by the most direct and practical route." By subsection 2, section 4356, Kentucky Statutes, being a part of chapter 87, Acts of 1914, it is further provided that there is hereby created a system of public state highways, which shall be composed and be all the roads to which state aid is furnished. Subsection 3 of the same section of the statutes, provides for the creation of a state road fund to provide means whereby the state of Kentucky may aid the counties in surveying and making maps of the public roads located therein, for locating and constructing new roads, for reconstruction of old roads, and for relocating and constructing roads already established as public roads, and subsection 4 authorizes the levy of a special tax for that purpose. Subsection 5 provides for the apportionment of the state road fund among the counties applying for state aid, and also provides that the sum so apportioned shall be expended in "constructing or reconstructing public roads under the direction of the Commissioner of Public Roads." By subsection 7 it is provided that the fiscal court of any county may pass a resolution stating that the public interest demands the improvement of a public road or section thereof within the county, and requesting that it be "constructed or reconstructed" as provided in the act. By subsection 8 it is provided that when more roads are petitioned for in any county than can be constructed in any one year, the fiscal court of the county, with the consent of the State Commissioner of public roads shall have power and authority to select from the roads petitioned for, the ones first to be constructed, having due regard for the most important road

and the distribution of the benefits of the act to all parts of the county. Subsection 9 provides that the term improvement as used in the act "shall mean any work whether engineering or construction work which is done according to plans agreed upon by the State Commissioner of Public Roads and the fiscal court, and which tends toward and has for its ultimate object, the permanent location and improvement of any public road or section thereof by the construction of macadamized road, etc." Subsection 10 provides for a survey which shall indicate the width and length of said road and shall also show how much of said road may be improved by "deviation from the existing lines." By subsection 18 it is declared to be the purpose of the act that the state shall pay one-half and the county one-half of the cost of all construction or reconstruction of all roads in which state funds are used, but it is further provided that no portion of the cost of acquiring any necessary land or right of way, nor any part of any damages incurred, awarded or paid shall be paid out of the money contributed by the state. By subsection 21 it is provided that any road constructed or reconstructed under the provisions of the act, shall forever thereafter be a county road and the duty of keeping the same in repair shall devolve upon the fiscal court to be maintained out of the general county fund as provided by law.

It is first insisted that the injunction should have been granted because no road had ever been established by the county court along a portion of the route selected by the fiscal court, and that the fiscal court was without authority to establish a new county road. It may be conceded that under the former road act, the county court alone had authority to open a road in the first instance. Kentucky Statutes, 4287-4300. Roe v. Alexander, County Attorney, 156 Ky. 507, 161 S. W. 510; Potter v. Matney, 165 Ky. 266. But an examination of the above sections of the act of 1914 clearly shows an intention on the part of the legislature to depart from that rule and confer on fiscal courts the power to open a road in the first instance. The state road fund is for the purpose of providing the means not only for relocating and constructing roads already established as public roads, but also "for locating and constructing new roads." The fiscal court may pass a resolution stating that the public interest demands the improvement of a public road and requesting not only its reconstruction but its original

construction. The term improvement means any work whether engineering or construction which is done according to plans agreed upon by the State Commissioner of Public Roads "and which tends toward and has for its ultimate object the permanent location and improvement of any public road." The survey which the fiscal court is empowered to make must show how much of the road may be improved "by deviation from the existing lines." Not only so, but the provision that no portion of the cost of acquiring any necessary land or right of way shall be paid out of the money contributed by the state, shows very clearly that it was not contemplated that the proposed routes should conform to roads already established. This view is further confirmed by the provision that inter-county seat roads shall be "on the most direct and practical route." We therefore conclude that in the selection of routes for inter-county seat roads, the fiscal court may establish new routes, and is not restricted to roads theretofore laid out by order of the county court.

The contention is also made that the provision of section 4356w, Kentucky Statutes, to the effect that inter-county seat roads shall be "on the most direct and practical route" and that the requirement of subsection 8, section 4356x, that the fiscal court in selecting the road to be constructed shall have "due regard for the most important road and the distribution of the benefits of this act to all parts of the county" are both mandatory and that a refusal to comply therewith may be controlled by mandamus or mandatory injunction. There can be no question that the power to make the selection is conferred on the fiscal court with the consent of the State Commissioner of Public Roads. Whether a particular route is the most direct and practical route or best distributes the benefits of the acts to all parts of the county, is a matter involving not only the question of direction and distances, but questions of expense, difficulty of construction and accommodation of the people. A determination of these questions necessarily involves the exercise of discretion with which the courts will not interfere. We so ruled in the case of Scott v. Faurest, 174 Ky. 673, and the facts of this case serve only to emphasize the necessity for adhering to that ruling. It is true that fiscal courts may sometime abuse their authority, but that fact is no argument why the

courts should usurp authority conferred on others and substitute their judgment for that of the particular body of men which the legislature has alone empowered to determine such questions.

Judgment affirmed.