### Fiscal Court of Garrard County v. Hamilton, et al.

(Decided October 13, 1922.)

Appeal from Garrand Circuit Court.

Counties—Issue of Bonds for Roads—Construction of Order.—
Where the fiscal court provided by order that, in co-operation with
the state and Federal governments, it would construct named
roads out of rock asphalt "provided the county is able to raise the
$192,000.00 by bond issue" necessary therefor; and where authority to issue bonds for that amount was voted at an election called

five days after the order of the fiscal court was entered, the issuance of such bonds for general road purposes or for improvement of the named roads by the county alone out of macadam, was unauthorized, even though the order calling the election, couched in the language of the statute, indicated that the bonds were to be used for general road purposes.

T. J. UNDERWOOD and LEWIS L WALKER for appellant.

G. C. WALKER and J. E. ROBINSON for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

On January 21, 1920, the fiscal court of Garrard county, at a regular meeting and by unanimous vote, adopted an order providing that:

"The proposed Federal highway to begin at the Madison county line at Paint Lick and running along the Lancaster and Richmond turnpike road to the city limits of Lancaster, and thence from the city limits of Lancaster on the Lancaster and Lexington turnpike road to Camp Dick Robinson, thence to the Boyle county line at King's Mill, be and the said route is hereby approved by the court and recommended that the same be accepted as the most feasible route.  Said route is approved and recommended, provided the county is able to raise the $192,000.00 by bond issue, that is necessary to build said road of rock asphalt and provided the state and Federal government pay 55% of the cost of the construction of the said highway."

On January 26, 1920, the county court of Garrard county, upon petition of the requisite number of qualified voters of the county, entered an order calling an election to be held on March 30, 1920, for the purpose of submitting to the qualified voters of the county the question:

"Are you in favor of issuing ($192,000.00) one hundred and ninety-two thousand dollars in bonds for the purpose of building roads and bridges in Garrard county, Kentucky?"

This order, after describing the number, amount, maturity, etc., of the bonds proposed to be issued, and for the advertisement and holding of the election, contained the further provision:

"That all money raised by the sale of said bonds shall be used solely and alone for the building, construction, or reconstruction of roads of asphalt, concrete, brick, stone, block, macadam, gravel or other process of equal merit."

An election pursuant to said order was duly adver-
tised and held on March 30, 1920, at which there
were 1,497 votes cast in favor of the proposed bond issue,
and 153 votes against it. The returns were duly can-
vassed and properly certified, and on April 6, 1920, the
fiscal court, at a regular term and by unanimous vote, or-
dered the clerk of the court to notify the State Commis-
sioner of Public Roads that the $192,000.00 worth of road
bonds had been authorized by the election of March 30,
1920,

"And that said bonds are now held by the court for the
purpose of sale, the proceeds of same to go towards pay-
ing the county's 45% of the construction of an asphalt
road from Paint Lick, Kentucky, along the Lancaster and
Richmond turnpike road to the city limits of Lancaster,
Kentucky, and thence along the Lancaster and Lexing-
ton turnpike road from the city limits of Lancaster,
Kentucky, to Camp Dick Robinson, and thence along the
King's Mill pike to the Boyle county line.

"The said bonds are now held by the court and said
sum is hereby appropriated for the purpose of paying to
the Commissioner of Public Roads 45% of the construc-
tion price of the abovenamed roads, provided the state
and Federal governments pay the other 55% of same."

No further action was taken by the fiscal court with
reference to the proposed bond issue until April 4, 1922,
when an order was entered reciting the facts above
enumerated, and that:

"It further appears to the court that the Federal
highway route, approved by an order of this court en-
tered on January 21, 1920, and April 6, 1920, has been
abandoned,"

and that

"It is therefore ordered by the court that the said
bond issue authorized by the election of March 30, 1920,
be made for general road purposes,"

and that

"There shall be a sufficient number of bonds issued
and a sufficient amount of said bonds to reconstruct the
Richmond road from Paint Lick to a point near Point
Leavell, where the road has been turned over to the state
of Kentucky, and a sufficient number of said bonds shall
be issued for the purpose of reconstructing the Lexing-
ton and Lancaster turnpike from the city limits of Lan-

caster to Camp Dick Robinson, both of said roads being on the route which was approved by this court as a Federal highway route. There shall also be issued sufficient bonds for the purpose of rebuilding the Lexington pike from Camp Dick Robinson to the Kentucky river, which was not on said route.''

A few days after this last order was entered, appellees filed this action in the circuit court against the fiscal court and the members thereof, setting out the above orders and seeking an injunction to prevent the issuance and sale of any of the proposed bonds, or the appropriation of any money realized from a sale thereof, on either the Richmond pike or the Lexington pike, or at all, ''because of the fact that the project for which they were authorized has been abandoned entirely.''

By their answer as amended, the defendants admitted the facts stated in the petition, and that by the orders of January 21 and April 6, 1920, the fiscal court bound itself to use and appropriate all of the bond issue of $192,000.00 on the proposed Federal highway route, provided the road was constructed of rock asphalt and provided further that the state and Federal governments should pay 55% of the cost of the construction; but claimed that because the Federal highway route had been abandoned and because as a result thereof the state and Federal governments would not pay 55% of the cost of the construction, or build said roads of rock asphalt, or at all, the court was no longer bound to sell the bonds and use the proceeds in constructiing a road of rock asphalt along that route, but had the authority to sell the bonds and spend the proceeds on any of the pikes in the county, provided the construction or reconstruction of same be of ''asphalt, concrete, brick, stone, block, macadam, gravel or other process of equal merit,'' as provided in the order calling the election. They further alleged that the proceeds of the bonds they were now proposing to issue and sell were to be used in reconstructing the Richmond and Lexington pikes of macadam, for the purpose of turning them over to be maintained thereafter by the State Road Department, and asking that the court declare the whole or any part of the bonds available, at least for such portions of these roads as had been included in the abandoned Federal highway route, if it should determine they were not available for the construction or reconstruction of any of the pikes of the county.

The court sustained a demurrer to the answer as amended, and enjoined the issuance or sale of any of the bonds, and the defendants have appealed.

This court has recently held in a number of cases that the fiscal court may not sell or appropriate the proceeds of bonds, voted by the people of the county for the construction or reconstruction of roads and bridges, otherwise than as designated in a resolution or order of the court adopted before the election, and upon the faith of which the power to issue the bonds was voted. Scott v. Forrest, 174 Ky. 672, 192 S. W. 691; Blain Campbell, et al. v. Clinton Co., 176 Ky. 396; Campbell v. Hammonds, 177 Ky. 219, 197 S. W. 646; Lawrence County v. Lawrence Fiscal Court, 191 Ky. 45, 229 S. W. 139.

These cases, upon which the judgment herein was based, concede that the fiscal court in making such orders as those there and here involved, acts in a legislative capacity, and that ordinarily when acting in a legisaltive capacity and no contract rights are involved, it may thereafter amend or repeal its action.

Hence the power of the judiciary to interfere with the legislative discretion of the fiscal court was, in those cases, expressly and necessarily based upon the theory that the order of the fiscal court indicating how the funds would be expended was, in effect, an agreement or contract with the people, and that to permit the fiscal court to use—for other purposes than those stated in the order —funds made available in such manner, would amount to a breach of that agreement or contract. It is therefore apparent that, for the application of that doctrine, the order of the court must be so connected in time and purpose with the election that the two constitute but separate parts of a single undertaking, in which co-operation between the people and the fiscal court is necessary and contemplated, for otherwise there could be no agreement or contract.

We have already indicated in Wilson v. Fiscal Court, *supra,* that this doctrine will not be extended—and obviously it should not—or applied unless a clear case is presented, and that such an agreement will not be implied from language not clearly indicating such a purpose. In all of the cases in which this doctrine has been applied, the order of the fiscal court was entered after the election had been called, and related only to the roads to be constructed, and the order in which they would be improved.

It will be noticed that the order involved here was entered five days before the election had been called, and relates not only to the roads to be improved but to the material to be used as well. In all other respects the orders, as well as the facts, in this and those cases, are alike, and similarly connected with the election; because in those cases, just as in this, the order of the county court calling the election and the advertisements therefor, following the language of the statute, indicated that the bonds were to be issued for general road and bridge purposes rather than for a particular purpose, as indicated by the order of the fiscal court.

The only question for decision therefore is whether or not the application of the doctrine of those cases to the facts of this would be an extension of that doctrine. In other words, are these differences in the facts material? We think not.

The fiscal court had no authority, unless the voters at an election would grant it, to issue bonds in the sum of $192,000.00 and it is therefore clear that the order of January 21 was made in contemplation of such an election as was held pursuant to the order of the county court, entered five days thereafter; and that the fiscal court could not, except in co-operation with the voters of the county and in pursuance of power granted at an election, carry that order into effect.

We are therefore of the opinion that the facts of this case bring it squarely within the doctrine of the cases above referred to, and that its application here is not in anywise an extension of that doctrine; either, because in those cases the order was entered after the election had been called, while in this case the order was entered before the call; or, because in those cases the order related simply to the roads to be improved, while in this case it also refers to the material out of which the proposed roads were to be built.

If an order dependent for efficacy upon the result of an election is binding with reference to the roads to be improved and the order of their improvement, it must also be binding in respect to the material to be used in such improvements, and in all other respects pertinent to the contemplated action. And although the order was entered here before the election had been called, it was entered so short a time previous thereto and is couched in such terms as to leave no possible escape from the

conclusion that an election authorizing the issuance of bonds to raise the funds that could not have been raised otherwise, was contemplated.

Besides, the order of April 6, entered almost as soon as the result of that election could have been officially ascertained, notified the state commissioner of public roads that the funds contemplated by the order of January 21 had now been made available, and were held for the purpose of carrying out that order.

Not only is this true, but the fiscal court made no attempt to issue any of these bonds for any other purpose for two years, or until the project for which the issuance of the bonds was authorized had been definitely abandoned, and the answer confesses they could not have been used otherwise if that project had not been abandoned.

It would certainly be inequitable, if not indeed ludicrous, to hold that because their agreement had become impossible of performance, by no fault of the parties to the agreement, the fiscal court was released from its obligations thereunder, but could, nevertheless, retain and use for other purposes the funds the people gave it for the purpose of carrying out the agreement alone.

We are therefore clearly of the opinion that the court did not err in holding that these bonds could not be issued and the proceeds of such sale used upon other roads than those designated in the order of the fiscal court of January 21, 1920, or for the improvement of the roads therein specified by the county alone and out of macadam, rather than by the county in co-operation with the Federal and State Governments, out of rock asphalt, as in that order provided.

Judgment affirmed.