## Levinthal et al. v. City of Covington.

(Decided April 29, 1932.)

BLAKELY & MURPHY for appellants.

SAMUEL W. ADAMS, RALPH P. RICH and ALFRED P. LEWIS for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal is prosecuted, seeking to reverse a judgment of the Kenton circuit court in holding that the pro-

ceeds of a bond issue, approved by the people under an election had under an ordinance providing for the construction and reconstruction of Robbins street from Madison avenue to Pike street, Covington, Ky., did not include the right to purchase property found necessary for the extension and construction of Robbins street from Lee to Pike street, as by the ordinance directed.

The one and only issue in this case is whether or not a certain piece of property described as located in the city of Covington at the corner formed by the intersection of Lee and Pike streets can be purchased with money received from a previous bond sale had under an ordinance designating the construction and reconstruction of certain streets in that city and wherein was designated for such improvement Robbins street from Madison avenue to Pike street.

In September, 1928, the board of commissioners of the city of Covington, a city of the second class, did, pursuant to the provision of its charter, or under section 3069 of the Kentucky Statutes, enact Ordinance No. 2156, authorizing the issuance and sale of $300,000 of the city's bonds to pay for the city's part of constructing and reconstructing certain streets and thoroughfares in the city of Covington. Said bond ordinance designated certain streets to be improved by their construction and reconstruction as therein proposed and the construction of certain viaducts on certain designated streets and declared the payment of the city's part of such public improvement work from said bond fund was the specific purpose for which said money was to be used, as required to be stated by said section 3069.

A large part of said designated streets have been constructed and reconstructed as provided under said ordinance, though several of the streets designated for such improvement have not been.

Robbins street has been constructed from Madison avenue to Lee street, but has not been constructed from Lee street to Pike street, for the reason that Robbins street, designated for such construction or reconstruction work, extends from Madison avenue only over it to its point of intersection with Lee street and does not extend from Lee street further over to Pike street. To make such construction and extension of Robbins street over to Pike street, it is admitted it will be necessary to purchase the intervening property lying between said streets, the

same being described in plaintiffs' petition as being the southwest corner of Pike and Lee streets.

The estimated cost of the city's part of the expense of constructing such of the said designated streets, which have not been improved, was admitted upon the trial in the case below to be $53,500. Also, it appears by the record that of the said ordinance bond fund of $300,000, there remains some $60,000 thereof with which to construct and reconstruct these remaining unimproved streets.

The city commissioners were petitioned to extend Robbins street from Lee street to Pike street by purchasing the property involved in this action for the sum of $23,900, found necessary if Robbins street was to be so extended from Lee to Pike street. Other citizens and taxpayers wanted this balance of some $60,000 of said bond fund expended in improvement of the streets mentioned in the bond ordinance which have not been improved.

In response to the call for the extension of Robbins street as stated, the city commissioners on Decmber 24, 1931, passed Ordinance No. 2645 proposing to purchase the plaintiffs' said property at the agreed price of $23,900 and provided that said money therefor should be paid out of said bond fund.

It is, however, in appellee's brief stated that it was understood the money required for such purchase was not to be appropriated out of the bond issue until the courts determined the right of the city to appropriate it for such purpose.

The city refused to appropriate the money, and this suit was filed in the Kenton circuit court under the Declaratory Judgment Act for the purpose of having the rights of the parties determined. Upon final submission, it was adjudged by the court that the city did not have the right to make the appropriation by reason of the fact that the ordinance proposing to purchase the property provides that said money is to be paid out of the bond fund mentioned in said ordinance. The plaintiffs' petition, seeking the construction of these ordinances therein set out, in which it was alleged they can only be held to mean and include the right of the city to purchase the property owned by these plaintiffs, was adjudged dismissed.

To reverse this judgment, holding that the city did not give and include the right under these ordinances to purchase the property of the plaintiffs, this appeal is prosecuted.

Section 3069 of the city's charter provides, in part:

"If, in any year, the general council shall deem it necessary to incur any indebtedness, the payment of which cannot be met without exceeding the income and revenue provided for the city for that particular year, it shall, by ordinance, order an election by the qualified electors of the city to be held, to determine whether such indebtedness shall be incurred. Such ordinance shall specify the amount of indebtedness proposed to be incurred, the purpose or purposes of the same, and the amount of money necessary to be raised annually by taxation for an interest and sinking fund, as herein provided."

The board of commissioners, pursuant to the provisions of this law, enacted Commissioners' Ordinance No. 2156, providing, as stated in its caption, "for submitting to the qualified voters of the city of Covington, the question of incurring an indebtedness of Three Hundred Thousand ($300,000.00) Dollars and issuing bonds of the city of Covington therefor, to provide a fund with which to pay for the city's part or portion of the cost and expense of constructing and reconstructing certain streets, parts of streets, public ways, viaducts, underpasses, retaining walls and thoroughfares of the city of Covington," and in its preamble further recited that "the condition of the streets hereinafter designated is such that the same should be constructed or reconstructed in manner now provided by the statutes and ordinances of the city of Covington," and further provided "the city's part or portion of the cost and expense of said construction or re-construction of said streets will approximate the sum of Three Hundred Thousand ($300,000.00) Dollars, which can not be met or paid out of the annual income or revenue of the city for the years 1928 or 1929," and therefore it was necessary, in order to provide a fund to meet payment of the city's part of the cost and expense for the *immediate improvement* of the streets and parts of streets as designated, that the city of Covington "incur an indebtedness of

$300,000 and issue its bonds therefor to provide a fund with which to pay the city's part of the cost of constructing and reconstructing the following parts or portion of streets," among which streets is designated "Robins Street from Madison Avenue to Pike Street," and did, by section 1 of said ordinance, further submit to the qualified voters of Covington the question:

> "Are you in favor of the city of Covington, Kentucky, incurring an indebtedness of Three Hundred Thousand ($300,000.00) Dollars and issuing its bonds therefor . . . to provide a fund with which to *pay* the *city's part* of the *cost and expense of constructing and reconstructing certain streets* and thoroughfares and to pay the city's part of constructing certain viaducts or underpasses over or under railroad tracks, in the city of Covington?"

This ordinance, after describing the number, amount, maturity, etc., of the bonds proposed to be issued and providing for the advertisement and holding of the election, contained the further provision in section 3 thereof, which reads in part as follows:

> "The proceeds received from the sale of said bonds shall be expended to meet the city's part of the cost and expense of the construction or reconstruction of the streets and parts of streets and for the public improvements set forth in the preamble hereof, and for no other purpose whatever."

And in section 4 thereof provides in part that:

> "If, however, any of said funds remain after the payment of the city's part of the cost and expense of the construction and reconstruction of the streets and thoroughfares, viaducts or underpasses and retaining walls provided for herein, then and in that event the Board of Commissioners may use such remaining funds for the payment of the city's part of its cost and expense of construction and reconstruction of any other streets or thoroughfares in the city of Covington to be determined by said Board of Commissioners, but said 'funds so remaining' shall never be used for any purpose whatever other than the payment of the city's part of its cost and expense of construction and reconstruction of

any other streets or thoroughfares in the city of Covington to be determined by said Board of Commissioners.' ''

The citizens of Covington approved by their votes the bond issue thus proposed by said ordinance.

It will be noted, from the language of the ordinance quoted, the care and particularity with which the purpose for which this bond issue was being proposed was set out and presented to the voters of Covington in this ordinance, thereby declaring that such fund voted by them, which fund could only be provided by their voting this public improvement tax upon themselves, should be limited and confined in its use and expenditure to the one only and expressly designated purpose declared therein, which was paying the city's part of constructing and reconstructing these certain designated streets and viaducts and ''for no other purpose whatever.'' Also, that such expenditure in making these improvements was at the time represented as needful by reason of the then condition of the streets, and further provided a safeguard against a different or variant use of any part of such bond fund, by providing that if part of the fund were left after completing the construction or reconstruction or improvement of the designated streets and viaducts, such portion thereof should be restricted and confined in its expenditure to the like construction or reconstruction of such other streets of the city of Covington as might be designated by the city commissioners therefor.

In carrying out and performing the designated work provided for by the terms of Ordinance No. 2156, Robbins street was constructed or reconstructed throughout the course of its length extending from Madison avenue westward to its intersection with Lee street, where it terminated, but it was not constructed or reconstructed beyond such point, over and across the plaintiffs' intervening property to Pike street, notwithstanding the ordinance designated the construction or reconstruction of Robbins street from Madison avenue not only to Lee but beyond it to Pike street.

It is admitted that in order to make such extension and construction of Robbins street from Lee street, where it now terminates, beyond or over to Pike street as described in the ordinance, the city would have to pro-

vide a way over and across plaintiffs' intervening property as necessary for its extension to Pike street.

The relative location of Robbins, Lee, and Pike streets and plaintiffs' property proposed to be bought under the provisions of Ordinance No. 2645 is shown in the following plat:

From an inspection of this plat, it is apparent, and by the parties it is agreed, that for the extension of Robbins street to Pike street the purchase of plaintiffs' property is necessary. The property in question sought to be purchased by the city is marked on the plat "Rebecca Levinthal."

Plaintiffs have offered to sell their property, described as the southwest corner of Lee and Pike streets, to the city for the extension of Robbins street at the price of $23,900.

The city commissioners, in order to complete the contract for its purchase, passed Ordinance No. 2645 in December, 1931. Said ordinance provides:

"Whereas, The construction of Robbins Street from Madison Avenue to Pike Street was contemplated by Commissioners' Ordinance No. 2156 ordering the issuance of bonds to produce funds for the therein named improvements, and,

"Whereas, It is necessary to acquire the hereinafter described real property to complete the extension of Robbins Street from Madison Ave., to Pike Street,

"The Commissioner of Public Finance is hereby authorized to issue a voucher in the sum of Twenty-Three Thousand Nine Hundred Dollars ($23,900.00) in payment therefor, upon a certificate by the City Solicitor that the title to said property is clear, free and unencumbered. *Said money to be paid out of the bond fund herein mentioned.*"

The question presented by this ordinance to the court below was whether or not the bond ordinance approved by the people and providing for the construction of Robbins street included the right of purchase of this Levinthal property necessary for the construction of Robbins street to Pike.

Appellants contend that the bond ordinance authorizing the construction of Robbins street into Pike and creating a fund for the purpose of constructing and reconstructing the designated streets, including Robbins street, would in its reasonable intendment and construction include the renewal of any obstruction and the purchase of any property found necessary for that specific purpose. This question presented to the court below was by it decided adversely to appellants' contention. The circuit judge handing down its opinion held that the purchase price of this property could not be taken out of this bond fund, in that it was not the intention of the commissioners under the terms of Ordinance No. 2156 to purchase this particular piece of property, nor was the question of its purchase so placed before the voters thereunder that the public understood it was their intention to purchase this property, and assigned, as a reason for its opinion the fact that the ballot as presented to the people at the election to approve or reject the issuing of these bonds was very specific in its intention and specifically named viaducts, underpasses, retaining walls, etc., on every street that was to have such extra construction, and it is reasonable to believe that had they intended to purchase the property in question, they would have so placed it upon the ballot and in the ordinance, in a way that the public might know exactly what they were voting for, and for what specific purpose their money thus voted was to be expended.

We are of the opinion that this statement of the intention of the commissioners to purchase this Levinthal property was not placed before the voters under the ordinance nor could the voters by reading the ballot as

presented interpret it to include the purchase of this property, and the lower court held that the city had no right to purchase said property for the reason that the funds set out in Ordinance No. 2156 were not available for its purchase.

There is no dispute in this case about both sides being willing to carry out the contract of purchase of this property, as the appellants want to sell and the city is willing to buy, if it has the right to pay the purchase price of the property out of the fund representing the sale proceeds of these bonds.

Again, should Ordinance No. 2156, purporting to give a full statement of the plan of the commissioners in proposing the bond issue as being to provide funds only for constructing and reconstructing certain streets, especially when we consider the particularity and detail and definiteness with which such improvement proposed to be made was therein set out, be held and construed as embracing or including the right to also buy property for extending a designated street, even if the buying of such property be considered as necessary for constructing such street over a new and longer course to a designated terminal? Was such a right, as claimed by appellants, to be reasonably inferred by the citizens of Covington voting upon the proposed bond issue, under an ordinance calling only for the construction and reconstruction of certain streets and that such fund was to be spent for no other purpose whatever except the construction and reconstruction of such streets? It is also pertinent to our inquiry herein to know that if the price of $23,900 required for the purchase of this intervening Levinthal property is suffered to be so used and diverted from the bond fund of some $60,000 now remaining, a good part of the construction and reconstruction work upon the remaining streets, designated by the ordinance to be so improved, will have to fail in their improvement, as it is admitted that some $53,000 will be required of the said $60,000 bond fund with which to effect the construction or reconstruction of these remaining designated streets which have not received such improvement.

It is reasonable to suppose that the property owners along these streets which have not received the construction work provided for by said bond ordinance voted for the issue of the bonds upon the belief that their streets would be improved by receiving the pro-

posed reconstruction and that the fund provided by the issue of such bonds would not be diverted so as to make impossible the reconstruction of all the designated streets through the application of the fund to uses and objects not clearly announced and provided for in the ordinance. It is to be supposed that they voted for the bond issue upon the implied agreement that the fund received from the sale of these bonds would be confined in its expenditure to the carrying out and performance only of the plan announced in the ordinance, which was that the bond fund would be used for constructing and reconstructing the designated streets and for no other purpose whatever.

All the authorities seem to agree that the fund created by the sale of bonds as provided for in this case cannot be appropriated for other purposes than the purposes specified in the bond ordinance, or as reasonably implied as incidental thereto for the performance of such designated improvement.

In Reynolds et al. v. Bracken County et al., 192 Ky. 180, 232 S. W. 634, a similar question was involved. This court therein said:

"Appellants, citizens and taxpayers of Bracken county, brought this action seeking to enjoin that county, and its fiscal court, and the individual members thereof, from executing or carrying out a certain contract made by the fiscal court with the defendant Godfrey Miller for the reconstruction under the contract of certain turnpike work in that county, and seeking to enjoin them from appropriating any money or funds obtained from the sale of certain bonds authorized by an election held in that county in June, 1916, or applying any of the proceeds of the bonds to the repair or reconstruction of the turnpike in question, and to have declared void all warrants theretofore issued by the fiscal court in payment of any work done on the said turnpike under the contract."

The court in that case said:

"It is necessary to consider two questions: First, has the fiscal court authority to dispose of the proceeds of the bond sale except in the manner and for the specific purposes prescribed in the order?"

And further said, citing with approval the case of Scott v. Forrest, County Judge, et al., 174 Ky. 672, 192 S. W. 691:

> "The fiscal court, prior to a bond election, named the roads to be constructed with the proceeds of the bond issue. After the election the fiscal court by an order undertook to divert the proceeds to a different purpose, and this court, in considering that question, said:
>
> " 'Since the order was made prior to the election and at a time when the voters were interested in knowing on what roads the proceeds of the bonds would be used, it cannot be doubted that the voters had the right to rely on the fact that the order expressed the final determination of the fiscal court and to cast their ballots accordingly. Under these circumstances, the order was, in effect, a contract with the people, and good faith requires that the contract be kept. A contrary rule would permit fiscal courts to apply money, voted by the people for one purpose, to another and different purpose for which it would not have been voted had the people been apprised in advance of such intended action.' "

Again in Montgomery County Fiscal Court v. Duff, 227 Ky. 508, 13 S. W. (2d) 515, in its consideration of a question similar to that presented in the instant case, the court quoted with approval the case of Hall v. Montgomery County Fiscal Court, 192 Ky. 716, 234 S. W. 274, where it was said:

> "It is plain from its recital of the fact that the order was made to enable the voters of the county to understand, in advance of casting their votes in the approaching election, the course that would be pursued by the fiscal court, in case of an affirmative vote, in expending the money arising from the sale of the bonds; and it is admitted that the order upon its entry and down to the election was advertised in the county newspapers and by speakers at all the numerous meetings held throughout the county for considering and discussing in all of its aspects the question whether the bond issue should be authorized or rejected by the voters, so it cannot be doubted

that its provisions were understood and approved by the latter.

"We may concede therefore that the order in question is to be regarded as in the nature of a contract between the fiscal court and voters of Montgomery county, by which, as held in Scott v. Forrest, County Judge, 174 Ky. 672, 192 S. W. 691; Campbell v. Clinton County, 176 Ky. 396, 195 S. W. 787; Lawrence County v. Lawrence Fiscal Court, 191 Ky. 45, 229 S. W. 139; Percival, etc., v. City of Covington, etc., 191 Ky. 337, 230 S. W. 300; Reynolds v. Bracken County, 192 Ky. 180, 232 S. W. 634, both are equally bound."

Also, to the same effect did this court speak in the case of Fiscal Court of Garrard County v. Hamilton et al., 196 Ky. 80, 244 S. W. 80, 81:

"This court has recently held in a number of cases that the fiscal court may not sell or appropriate the proceeds of bonds, voted by the people of the county for the construction or reconstruction of roads and bridges, otherwise than as designated in a resolution or order of the court adopted before the election, and upon the faith of which the power to issue the bonds was voted. Scott v. Forrest, 174 Ky. 672, 192 S. W. 691; Campbell et al. v. Clinton County, 176 Ky. 396, 195 S. W. 787; Campbell v. Hammons, 177 Ky. 219, 197 S. W. 646; Lawrence County v. Lawrence Fiscal Court, 191 Ky. 45, 229 S. W. 139."

We deem it unnecessary to cite further authorities in support of the position and rule held and announced in these cases that where the use of a fund raised upon sale of bonds, issued upon representations set out in the ordinance proposing their issue that it would be expended for only a particular purpose or improvement, such fund cannot be diverted to other use or expenditure thereof, unless such use is merely incidental to and reasonably implied as part of the designated object for which the bond fund is voted. Such was the situation in the case of Downing v. Town of Chinnville, 237 Ky. 121, 34 S. W. (2d) 961, 962, and other cases cited and relied on by appellant, where the use of the fund was merely in building small culverts necessary in constructing a street though not mentioned in the ordinance, as they were

merely incidental to its declared purpose of constructing streets through said town and as to which the court therein rightly said while approving the building of culverts as an incidental part of the street construction designated:

> "Of course, under the guise of a street improvement, municipal authorities cannot construct a bridge over any considerable stream or valley and charge its cost against the property which abuts on the street or streets which lead up to such bridge. In such state of case, the bridge is in no real sense a part of the street within the meaning of the statutes regulating the apportionment of the cost of street improvements."

As was also held in the case of City of Hazard v. Adams, 229 Ky. 598, 17 S. W. (2d) 703, 704.

The situation presented herein, however, is different. New commissioners are now, some three years after the enactment of the ordinance under which this bond fund was secured for constructing and reconstructing these streets, proposing to use a material part of such fund, not directly for constructing a street, but for buying property over which to construct a street. Such expenditure of pactically half of the remaining bond fund, resulting in the necessary failure and inability of the city to complete a good part of the designated construction and reconstruction work of its streets, must be considered as a departure from the original plan and one not intended or considered as embraced in such original plan, and we are therefore of the opinion that the judgment of the lower court in holding that it is not within the authority of the commissioners to purchase plaintiffs' property out of said bond fund is correct and based upon the rightful construction of Ordinance No. 2156, and that the later Ordinance No. 2645, directing the purchase of this property and for its payment out of said bond fund, was beyond the power of the commissioners to so direct and use the bond fund, which was provided by the sale of bonds issued pursuant to the provisions of Ordinance No. 2156, and which fund according to its terms was to be used only for construction and reconstruction of its streets and for no other purpose, such order being construed as a contractual limitation upon its expenditure and as not including the power of buying any property whatsoever therewith.

For the reasons indicated, the judgment of the lower court denying the commissioners the right to purchase appellants' property for directed street construction out of this bond fund should be, and is hereby, affirmed.