HAINES, AUDITOR, APPELLEE, *v.* BOARD OF COUNTY COMMISSIONERS, APPELLANT.

(No. 2549—Decided February 29, 1960.)

*Mr. Mathias H. Heck,* prosecuting attorney, and *Mr. William L. Falknor,* for appellee.

*Messrs. Peck, Shaffer & Williams,* for appellant.

CRAWFORD, J. This is an appeal on questions of law from a declaratory judgment of the Court of Common Pleas pertaining to the use which the defendant, Board of County Commissioners, may make of part of the proceeds of a two-million-dollar bond issue approved by the voters of Montgomery County on November 6, 1945, for the purpose of "purchasing or constructing a fireproof building, and a site, and equipping and furnishing the same for a courthouse and jail * * *."

After acquisition of a site, the remaining proceeds from the bonds are insufficient for constructing a courthouse and jail. Defendant board is proposing to use a portion of the proceeds to construct only a jail and offices for the sheriff and coroner.

The Court of Common Pleas held that the board lacks the legal authority to do so.

The bill of exceptions consists of copies of two resolutions adopted by the board, one dated September 6, 1945, proposing the bond issue, and the other dated April 30, 1959, resolving to use a portion of the proceeds of such bonds to build a jail and the related accommodations only. The pertinent parts of these resolutions are as follows:

"Resolution No. 211
"September 6, 1945.

"Resolution to submit the question of the issue of bonds to the electors, and certifying same to the board of elections in connection with the purchase or construction of new courthouse and jail.

"Be it resolved, and it is hereby determined by the Board of County Commissioners of Montgomery County, Ohio, that it is necessary for the purpose of purchasing or constructing a fireproof building, and a site, and equipping and furnishing the same for a courthouse and jail, and including the real estate or easements necessary to afford light, air, protection from fire, suitable surroundings, and ingress and egress, to issue and sell bonds of Montgomery County in the amount of two million ($2,000,000) dollars, the money to be used in connection with the

money realized from the proposed sale of the real estate or interest in same, now owned and used by Montgomery County, Ohio, as a site for its present courthouse and jail, for the purpose aforesaid. * * *."

"Resolution No. 475
"April 30, 1959

"Resolution determining to proceed with the construction of a jail.

"Whereas, it has been determined that it is advisable to construct a new jail; and

"Whereas, it is necessary to first determine the legality of the use of funds previously voted for the purpose of construction of a fireproof building for a courthouse and jail for the use of construction of a jail only.

"Now, therefore, be it resolved by the Board of County Commissioners of Montgomery County, Ohio, that it would be to the public's interest to construct a jail for the purpose of housing facilities for the sheriff's office, the coroner's office and facilities for incarceration of prisoners, which offices were originally planned for the courthouse as a part of the county governmental center, so as to construct said jail as a separate building, contrary to the purpose clause of said bond issue which was to construct a courthouse and jail in one building. * * *."

These facts are alleged and admitted in the pleadings: That the issue appeared on the ballot in proper form, corresponding to the resolution of September 6, 1945; that the bonds were duly issued, advertised and sold; that a portion of the proceeds of said bonds has been expended for the acquisition and development of real estate for a site; that there now remains an unexpended balance of $907,545.95, which is insufficient to accomplish the full and complete purpose of said bond issue (even if, according to an assertion made in defendant's brief, and not challenged, there is added thereto the proceeds of a future sale of the presently occupied courthouse and jail site); that on several occasions the electors of Montgomery County have defeated additional bond issues, the funds from which would have been used to provide new courthouse and jail facilities; that the defendant board has determined to establish a county governmental center composed of a group of several buildings, in-

cluding a new courthouse, a new jail with related facilities, and also a juvenile center which is presently being constructed from proceeds of a tax levy approved by the electors of the county for such purposes in 1957; and that the defendant board has determined that it would be for the best interests of the county and better serve the main purpose and intent of the bond issue to construct a portion of the facilities described in the purpose of the bond issue, allowing sufficient space on the site for additional county offices and other courthouse facilities when approved by the electors, all as part of the county governmental center.

Section 133.36, Revised Code, contains the following provision:

"The money from the principal, on the sale of such bonds or notes, shall be credited to the fund on account of which the bonds or notes are issued and sold and used only for the purpose set out in the resolution or ordinance of the taxing authority * * * *"

In addition to this statute, numerous authorities are cited and found in support of the well-recognized principle that the proceeds of a bond issue are in the nature of a trust fund which must be used for the purpose for which they are approved and issued. 64 Corpus Juris Secundum, 551, Municipal Corporations, Section 1929; 1 Jones, Bonds and Bond Securities (4 Ed.), 400, Section 380; *Walker* v. *Wheeler, Mayor* (1954), 210 Ga., 432, 80 S. E. (2d), 691; *McNichols, Aud.,* v. *City and County of Denver* (1949), 120 Colo., 380, 209 P. (2d), 910; *Levinthal* v. *City of Covington* (1932), 243 Ky., 614, 49 S. W. (2d), 574; *Stringham* v. *Union County People's Utility Dist.,* 182 Ore., 565, 187 P. (2d), 150.

It is conceded on all sides that the wording of the issue on the ballot corresponded with that declared in the resolution of September 6, 1945. Therefore, the defendant board has entered into an undertaking in the nature of a contractual arrangement with the voters. The terms of that contract require the board to comply with the above-quoted provision of Section 133.36, Revised Code.

It is urged that the present proposal complies with the purpose of the bond issue. Several authorities are cited. Some concern the discretion lodged in boards of education to vary the

number, location, etc., of school buildings in order best to serve the primary purpose of school building bond issues. *State, ex rel. Van Harlingen, v. Board of Education*, 104 Ohio St., 360; *State, ex rel. Clarke, v. Board of Education*, 11 Ohio App., 146.

It will be noted that reference is made in these opinions to special statutes granting broad powers in such matters to boards of education. Furthermore, we are confronted here with changes of plan more fundamental than the variations involved in these school cases, which mostly concern such matters as the number, location, and style of buildings. While the briefs pointed out that the deviation proposed here involves a change of plan from one combined building to a separate structure, we shall not rest our decision merely upon that ground.

In *Village of Sheffield Lake v. Holley, Mayor*, 152 Ohio St., 374, the Supreme Court upheld the authority of a village council to alter the location of a sewer for which the voters had approved a bond issue. We are unable to determine whether the issue as stated on the ballot specified the proposed location. In any event, our present question does not involve a change of location.

In *Krieg v. City of Springfield*, 92 Ohio App., 436, this court held that where the proceeds of a municipal bond issue for the purpose of eliminating two railroad grade crossings proved insufficient to eliminate both, the legislative authority of the city had discretion to proceed with one.

Obviously, the exercise of such discretion in these cases, by proceeding as far as possible with the authorized improvement although it might result in a relocation or a diminution in quantity but not in a change of character, served the primary purposes of the bond issue better than would a decision to do nothing.

But some projects are not divisible. The purpose of the bond issue here in question involves two components, two integral and constituent parts—a courthouse *and* a jail. Neither a jail without a courthouse nor a courthouse without a jail can be said to fulfill the expressed purpose. It so happens that the courthouse is named first and is obviously the larger and paramount part of the purpose; the jail is an adjunct to the courthouse. The bond issue contemplated a complete governmental unit embodying both. The construction of a jail alone would fail to serve that purpose.

Comparable projects comprising two or more essential components are numerous. Judge Thomas, in the Court of Common Pleas, aptly compared the present proposal to the use of inadequate funds for a school and swimming pool in the construction of a swimming pool alone. Other illustrations immediately suggest themselves, such as a garage without a house, a cart without a horse, etc.

We have not found, nor has there been cited to us, any authority which would support a legislative body in selecting and proceeding with part only of different kinds of improvements, all of which are essential to the accomplishment of the declared purpose of a bond issue.

An example somewhat more extreme than that in the present case, but nevertheless illustrative, is found in the case of *State, ex rel. Traeger*, v. *Carleton* (1954), 242 Minn., 296, 64 N. W. (2d), 776. There, the proceeds of a bond issue for a sewer system extension were found insufficient; the court held it was improper to construct a pumping or lifting station when it was impossible to construct also the proposed sewers to be served by it.

It is argued that the present proposal to construct a jail is a logical second step in the accomplishment of an entire plan, the first step being the acquisition of the site, and a future step being the completion of a courthouse, all as part of a plan for a civic center. The contention is that the defendant board should proceed as far as funds will permit toward the ultimate goal.

This argument must fail, in view of the fact that the purpose of the bond issue is not divisible.

It is essential in all such projects that a site first be procured. But the construction of a jail only, without a courthouse, cannot be considered an authorized second step. It is at most only a part or beginning of a step which may never be completed, leaving the overall project in suspension. What proof is there, since the existing proceeds have long been considered inadequate, that the voters wish to continue the purpose? The repeated failures of proposed supplemental bond issues give no assurance that they do.

In the distressing dilemma in which they are placed, the parties to this action, the auditor and the board of county commissioners, have commendably sought a solution. No question

of the wisdom of the proposal is before us. But we reluctantly find that the defendant board is not clothed with authority to use its discretion. The present plan is not in accordance with the contract with and the instructions of the voters. Any such proposed change in the plans would require the approval of the voters.

The judgment is affirmed.

*Judgment affirmed.*

WISEMAN, P. J., and KERNS, J., concur.